OPINION OF THE COURT
Raymond E. Cornelius, J.
This proceeding, commenced pursuant to Family Court Act article 10, presents the question, which has heretofore been undecided by the courts of this State, whether or not a finding that a child is a “neglected child” may be predicated solely upon prenatal conduct by the mother. “Child” is defined as “any person or persons alleged to have been abused or neglected” (Family Ct Act § 1012 [b]). Under the facts of this case, it is further necessary to determine whether or not an unborn child may be considered a person, in order to receive the protection of this act.
The court held a hearing, and the facts of the case are relatively simple. The child, subject of this proceeding, was born prematurely on January 12, 1985, and weighed slightly above the fifth percentile for the 35-week gestation period. In addition to being small, the child was jittery, irritable, and was found to have a small philtrum, increased facial hirsutism, and a thin upper lip.
Another child, previously born to the respondent, had been adjudicated a neglected child, pursuant to the provisions of Family Court Act § 1051 (a) (N-219-82). This child had been placed in foster care and, as part of the dispositional order, the respondent was directed to complete a residential alcohol treatment program at a specified facility and to refrain from the *977 abuse of alcoholic beverages. On July 12, 1984, a petition to extend foster care placement was granted, and the respondent was further directed “to involve herself in a residential treatment center of her choice” and “to follow through with any and all recommendations for treatment”. Based upon the proof adduced at the hearing, in this proceeding, the court finds that the respondent has not complied with these provisions of the court orders.
The respondent has acknowledged having had a problem, since 15 years of age, with the drinking of alcoholic beverages. Shortly after the birth of the child, she admitted to hospital personnel that she consumed approximately 10 alcohol beverages on an average of 3 or 4 days every week. During the course of the pregnancy, social workers from the Department of Social Services urged her to seek evaluations or treatment at certain facilities. Nevertheless, the respondent, as already indicated, failed to make any appointments, or otherwise make efforts to obtain, either inpatient or outpatient treatment for alcohol abuse. The circumstantial evidence indicates that the respondent was continuing the use of alcoholic beverages during her pregnancy. The respondent lived in a single room above a bar, and, on one occasion, early in the morning, one of the social workers found her at the bar with a cocktail glass in her hand.
The respondent’s residence consisted of a very small room, containing only a bed, chest and night stand. She was required to share a bathroom and kitchen facilities with other tenants of the building. In the fourth month of pregnancy, the respondent became entitled to additional public assistance, in the amount of $50 every month, because of her unborn child. (See, 18 NYCRR 352.7 [k].) Although this amount was not paid, retroactively, until the sixth month of pregnancy, there is no indication that the respondent used these funds to purchase clothing, furniture or other necessities for the child. However, the respondent’s boyfriend did testify that arrangements had been made, with his relatives, to procure used clothing, a crib, and other furniture.
Finally, in connection with the alleged failure to obtain medical care, the proof established that the respondent made only one appointment for prenatal care, which occurred two days before the birth of the child. This appointment was only made at the request of a community health nurse. In addition, the medical records indicate that the respondent was treated for venereal disease in September 1984.
The petition contains four causes of action, and, for purposes of this proceeding, a “neglected child” is defined as follows:
*978 “a child less than eighteen years of age
“(i) whose physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his parent * * * to exercise a minimum degree of care
“(A) in supplying the child with adequate food, clothing, shelter ***or medical * * * care, though financially able to do so or offered financial or other reasonable means to do so; or
“(B) in providing the child with proper supervision or guardianship * * * by misusing alcoholic beverages to the extent that he loses self-control of his actions; or by any other acts of a similarly serious nature requiring the aid of the court”. (Family Ct Act § 1012 [f].)
Although the living arrangements of the respondent were minimal, at best, the court, is unable to conclude that the respondent failed to make adequate arrangements for shelter. Furthermore, the respondent’s admissions that she had failed to procure furniture and other items is not necessarily inconsistent with her boyfriend’s testimony, to the effect that arrangements had been made to obtain used clothing and furniture. Accordingly, the issue is presented as to whether or not the respondent’s prenatal, abuse of alcohol and failure to seek medical care, except on one occasion, constituted neglect.[1]
The definition of a “neglected child” involves a twofold analysis. First, the status of the child must be established as less than 18 years of age, and either an actual impairment of a physical, mental or emotional condition, or proof of imminent danger of impairment.[2] In this case, the only evidence of actual impairment is a notation, contained in the medical record, that “there is a small possibility that the child might have fetal alcohol syndrome” based upon the facial characteristics and the fact that the child was small for her gestational age, as more particularly described above. In this court’s opinion, this would be insufficient to establish actual impairment, and, therefore, petitioner’s case must rest on the theory of “imminent danger” of *979 impairment. The second part of the definition requires proof of some omission or failure, on the part of the parent, to exercise a minimum degree of care. Specifically, the respondent is charged with the failure to supply proper medical care, and also providing proper supervision or guardianship by misusing alcoholic beverages to the extent of losing self-control. In this latter connection, petitioner may also rely upon the following evidentiary presumption: “(iii) proof that a person repeatedly misuses a drug or drugs or alcoholic beverages, to the extent that it has or would ordinarily have the effect of producing in the user thereof a substantial state of stupor, unconsciousness, intoxication, hallucination, disorientation, or incompetence, or a substantial impairment of judgment, or a substantial manifestation of irrationality, shall be prima facie evidence that a child of or who is the legal responsibility of such person is a neglected child except that such drug or alcoholic beverage misuse shall not be prima facie evidence of neglect when such person is voluntarily and regularly participating in a recognized rehabilitative program; and”. (Family Ct Act § 1046 [a] [iii].)
In at least one reported decision, a court has held that the excessive use of drugs, prior to birth, would support a finding that a child was a “neglected child” on the theory that the parent would be unable to provide adequate care subsequent to birth. (Matter of “Male” R., 102 Misc 2d 1 [1979].) However, the same court expressed reservation in regard to predicating such a finding solely upon the basis that the prenatal drug use caused an actual physical impairment. (Cf. dictum contained in Matter of Vanesa “F”, 76 Misc 2d 617 [1974].) The only distinction, of course, is the fact that, after birth, a child is a person who requires care and supervision, and it may be safely concluded that a mother, who is addicted to drugs would not possess the mental capabilities of providing that care because of her continued addiction and use. On the other hand, drug or alcohol abuse, which results in actual physical impairment at the time of birth, depends solely upon conduct and consequences, involving an unborn child. Although the proof in the instant proceeding is insufficient to establish that the respondent’s abuse of alcohol, during pregnancy, actually caused fetal alcohol syndrome at the time of birth, the court, nevertheless, holds that such proof was sufficient to establish, an “imminent danger” of impairment of physical condition, including the possibility of fetal alcohol syndrome, to the unborn child. For similar reasons, the court furthermore holds that the failure to obtain prenatal, medical care, except on one occasion, constituted conduct which created the same “imminent danger”, given the respondent’s history of *980 alcohol abuse. In this connection, medical science has undergone recent and dramatic advancement in the knowledge and treatment of the unborn child.
In order for the court to conclude that the unborn child, in this proceeding, was a “neglected child”, it is also necessary to determine whether of not such a “child” may be considered a “person”, thereby providing the protection of Family Court Act article 10. (Family Ct Act § 1012 [b].) The Supreme Court of the United States, for purposes of the US Constitution 14th Amendment, has held that an unborn child does not constitute a person. (Roe v Wade, 410 US 113 [1973].) Nevertheless, this court would agree with the contention that this decision, made in conjunction with the issue of abortion, should not preclude “the states of the power to grant legal recognition to the unborn in non-14th Amendment situations.” (Myers, Abuse and Neglect of the Unborn: Can the State Intervene?, 23 Duquesne L Rev 1, 15 [fall 1984].) Indeed, the Supreme Court has recognized that the State has “important and legitimate interest in protecting the potentiality of human life”, which becomes paramount to the interest of the parent, at the point the fetus is considered viable. (Roe v Wade, supra, p 162; also see, Akron v Akron Center for Reproductive Health, 462 US 416 [1983]; Planned Parenthood Assn. v Ashcroft, 462 US 476 [1983]; Planned Parenthood v Danforth, 428 US 52 [1976].) In addition, this court would be in accord that this “interest in potential life should extend to protection of the quality of life”. (23 Duquesne L Rev 1, 19.)
The purpose of Family Court Act article 10 was “to establish procedures to help protect children from injury or mistreatment and to help safeguard their physical, mental, and emotional well-being”. (Family Ct Act § 1011.) The laws relating to abuse and neglect, as contained in this article, certainly afford an “effective means to achieve prevention”, and represent a “reasonable mechanism to implement state interests in the unborn”. (23 Duquesne L Rev 1, 29-30.) Accordingly, this court holds that an unborn child is a “person”, and, thereby, entitled to the protection of this article.[3] Based upon the foregoing reasons, the court concludes that the child, subject of this petition, is a “neglected child”, and directs that a dispositional hearing be held.

. The remaining proof is primarily directed at the alleged abuse of alcohol and failure to obtain medical care, and there would not appear to be an additional basis for sustaining the petition on the basis of the “catchall” provision in reference to “other acts of a similarly serious nature requiring the aid of the court”. (See, Besharov, Practice Commentary, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 1012, p 240.)

. Cf. Family Ct Act § 1012 (e), which defines an “abused child” as a child less than 18 years of age, whose parent inflicts, creates, commits, or allows certain acts to occur against the child. (See also, Besharov, Practice Commentary, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 1012, p 240.)

. In a recent published decision, essentially the same determination was made in a family offense proceeding. (Matter of Gloria C. v William C., 124 Misc 2d 313 [1984].)