OPINION OF THE COURT
Jeffry H. Gallet, J.
Respondent mother moves for dismissal of this child protective proceeding alleging petitioner’s failure to state a cause of action. (CPLR 3211 [a] [7].)
*334 THE ISSUE
At issue is whether a mother’s prenatal drug use alone can form the basis for a finding of neglect under section 1012 (f) (i) (B) of the Family Court Act.
THE FACTS
The petition alleges that a child with a positive toxicology for cocaine was born to respondent and that she admitted using cocaine during her pregnancy. Respondent, allegedly, is not enrolled in a drug treatment program although encouraged to do so by petitioner. There is no allegation of misbehavior by respondent after the child’s birth, or that the mother is drug addicted or a regular drug user.
RESPONDENT’S MOTION
Respondent argues the petitioner fails to allege that respondent has misused a controlled substance (Public Health Law § 3306) since the child’s birth, or facts indicating that the alleged prenatal drug use currently puts the child in imminent risk of physical or emotional danger (Family Ct Act § 1012 [f\ H [B]).
Petitioner and the Law Guardian argue that an inference of continued drug misuse can be made from respondent’s admitted prenatal drug use and the positive toxicology report and that such an inference alone is sufficient to establish the elements of child neglect.
The Legal Aid Society, as Law Guardian, argues that the court could find in útero neglect, citing Matter of Smith (128 Misc 2d 976 [Fam Ct, Monroe County 1985]) and Matter of Gloria C. v William C. (124 Misc 2d 313 [Fam Ct, Richmond County 1984]).
DISMISSAL ON THE PLEADINGS-GENERALLY
In determining this motion, the court must take the petition’s factual allegations as true (Burlew v American Mut. Ins. Co., 99 AD2d 11, affd 63 NY2d 412 [1984]), and give the complaint a liberal construction and the benefit of all reasonable inferences (Underpinning & Found. Constructors v Chase Manhattan Bank, 46 NY2d 459 [1979]; Westhill Exports v Pope, 12 NY2d 491 [1963]).
However, where, as here, a statutory cause of action is *335 involved, the complaint must comply with the statute (Sanchez v Village of Liberty, 42 NY2d 876 [1977]).
DISMISSAL ON THE PLEADINGS-OHILD PROTECTIVE PROCEEDINGS
To originate a child neglect proceeding, the petitioner must file a petition alleging facts sufficient to establish that a child is "neglected” as that term is defined in article 10 of the Family Court Act. (Family Ct Act § 1031.) Here, petitioner must plead facts to show that this newborn is a child
"whose physical, mental or emotional condition * * * is in imminent danger of becoming impaired as a result of the failure of his parent * * * to exercise a minimum degree of care * * *
"in providing the child with proper supervision * * * by misusing a drug or drugs”. (Family Ct Act § 1012 [f] [i] [B]; emphasis added.)
Petitioner must plead and prove respondent’s potentially harmful behavior to establish neglect. (Matter of Millar, 40 AD2d 637, 638 [1st Dept 1972], affd 35 NY2d 767 [1974].)
As movant avers, actual custody of a child is not always required to find child neglect. For example, a failure to exercise a minimum degree of care may be established upon proof of the abuse or neglect of a sibling (Matter of Christina Maria C., 89 AD2d 855 [2d Dept 1982]; Family Ct Act § 1046 [a] [i]); or the developmental disabilities of the child (Matter of Alfredo HH., 84 AD2d 860 [3d Dept 1981]); or a parent’s incapacitating mental illness (Matter of Eugene G., 76 AD2d 781 [1st Dept 1980]). Nor would actual custody be necessary where there is proof of regular and excessive drug use before and after birth, in combination with the statutory evidentiary rule that repeated misuse of a drug or alcohol, to an extent that would be expected to produce an inability to provide supervision and care, establishes a prima facie case of neglect. (Matter of "Male" R., 102 Misc 2d 1 [Fam Ct, Kings County 1979]; Family Ct Act § 1046 [a] [iii].) It is this rule which seems to lead petitioner to propose that from any prenatal drug use and an at-birth positive toxicology for cocaine, a continued and repeated use can be inferred, even absent such an allegation in the petition or of additional facts to support that conclusion.
An admission of use of cocaine during pregnancy is not comparable to the circumstances in "Male” R. (supra). Here the admission is nonspecific as to time of occurrence, dosage *336 or frequency. Nor can this court infer that a positive toxicology report provides evidence of continued drug use in the manner an infant’s drug withdrawal symptoms did in "Male" R. (102 Misc 2d, supra, at 6, n 12). The petitioner must plead and be prepared to prove the significance, if any, of the positive toxicology report and the alleged admission.
Without more, petitioner’s cause of action stands solely on a woman’s prenatal conduct. Does petitioner argue that the mere use of a controlled substance any time in a parent’s life proves inability to parent? What if the use occurred years before the child’s birth or while a child is away at camp? If petitioner suggests that any illicit drug use during a mother’s lifetime adumbrates danger to her child, that argument must be rejected. It is the Commissioner’s burden to prove that any prior drug use puts the child in danger now. (Family Ct Act § 1012 [f] [i] [B].)
An expectant mother, just like any other person, is protected by a constitutional right to privacy and bodily integrity which the State may not violate without showing a compelling State interest. (Roe v Wade, 410 US 113, 155 [1973]; Thornburgh v American Coll. of Obstetricians & Gynecologists, 476 US 747 [1986]; see also, Schloendorff v Society of N. Y. Hosp., 211 NY 125 [1914].) This court sees no evidence in either the Family Court Act or its legislative history that New York State has seen fit to regulate a pregnant woman’s body or to control her diet, medication, exercise or smoking habits on behalf of a fetus. As the Supreme Court explains in Roe, "[i]n areas other than criminal abortion, the law has been reluctant to endorse any theory that life, as we recognize it, begins before live birth or to accord legal rights to the unborn except in narrowly defined situations and except when the rights are contingent upon live birth. * * * In short, the unborn have never been recognized in the law as persons in the whole sense.” (Supra, at 161-162.)
MOTION TO AMEND
Subsequent to the submission of this motion, the Commissioner moved, by order to show cause signed by me, to amend his petition. On the return date, the Commissioner failed to appear or to submit an affidavit of service of his motion. Neither of the other parties in this hotly contested proceeding have responded to or in any way acknowledged the motion to amend. Accordingly, I am deeming that motion abandoned.
*337 However, had the amended answer been subject to a motion similar to the one before me, the result would not differ from the one here.
NEO-NATAL NEGLECT
The Legal Aid Society’s argument that the Family Court Act provides for prenatal child neglect is rejected. I see no authority for the State to regulate women’s bodies merely because they are pregnant. By becoming pregnant, women do not waive the constitutional protections afforded to other citizens. To carry the Law Guardian’s argument to its logical extension, the State would be able to supersede a mother’s custody right to her child if she smoked cigarettes during her pregnancy, or ate junk food, or did too much physical labor or did not exercise enough. The list of potential intrusions is long and constitute entirely unacceptable violations of the bodily integrity of women. To the extent that this opinion conflicts with those of my learned colleagues in Smith (supra) and Gloria C. (supra), I respectfully disagree with them.
DECISION
Conceding the facts pleaded, petitioner has not established a claim cognizable under the law. (CPLR 3211 [a] [7]; Foley v D’Agostino, 21 AD2d 60 [1st Dept 1964].)
This court is not unmindful of the damaging effect of regular drug use on one’s ability to parent. It is not impossible to sustain a cause of action for neglect based on prenatal drug use. However, to do so, the petitioner must prove a direct connection between the use and the child’s safety. For example, to plead and prove a parent’s drug addiction would be sufficient for a finding of neglect. The petitioner could possibly be able to plead and prove that a nonaddicted parent’s past drug use places the child in danger based on appropriate expert testimony. The key phrase is "plead and prove”.
There is no inference to be drawn from the Family Court Act that a mere use, or even occasional uses, of a controlled substance prior to a child’s birth puts it in imminent danger of harm. One can only speculate as to how many good parents had occasionally used marihuana, for example, prior to the birth of their children. This court would be overreaching by far to infer that each of them is a neglectful parent. Acceptance of the Commissioner’s theory of this case would require such an inference. It is unwarranted.
*338 The petition is dismissed and the remand vacated. In view of the potential for physical injury to the child, this order is stayed for five days to allow for repleading, if the Commissioner be so advised, consistent herewith. (CPLR 3211 [e]; see, Matter of T. Children, 123 AD2d 390 [2d Dept 1986].)