OPINION OF THE COURT
Rita G. Bolstad, J.
Respondent mother has been charged with neglect alleging her child was born with a positive toxicology for cocaine. She has not cooperated with a drug treatment program and she has had no prenatal care. An amended petition regarding the *552 newborn child was subsequently brought against the putative father alleging a history of drug abuse and psychiatric hospitalizations.
In support of these allegations the court heard the testimony of the caseworker and received in evidence the hospital records of the mother, child and putative father.
The caseworker testified that respondent mother who was at first willing to cooperate with a drug treatment program refused to do so at the putative father’s suggestion.
A careful examination of the child’s birth records reveals that immediately after birth a urinanalysis was ordered by the attending physician who also noted under complications of pregnancy that there was no prenatal care. The laboratory report indicated a positive test result for cocaine. According to the nurses’ notations from February 17, 1990 through March 22, 1990, the baby was jittery, irritable, and cried a lot. The child was also diagnosed to have bacteremia and received antibiotic treatment as well as being placed on cardiopulmonary monitor.
The court, moreover, notes that the mother’s expected date of delivery was March 13, 1989, but the child was born on February 13, 1989, at least one month prior to her due date. In addition, the child’s weight at birth was only 4 pounds, 1 ounce, a low birth weight.
The respondent mother testified in explanation of the child’s positive toxicology at birth that the food in her apartment was contaminated by a gas leak.
The respondent father has an extensive history of drug abuse dating back to the age of 15, together with several suicide attempts documented by his hospital records. At one time he was confined in Bronx State Psychiatric Hospital from August 1987, until December 1987. In addition to being mentally unstable, his numerous attempts at seeking out hospital help reveal that he is a malingerer. Respondent father also testified that someone put poison in his food.
The court has had the unique opportunity to observe the demeanor of the respondents, their testimony is hardly persuasive. Furthermore, the court finds respondents’ testimony to be incredible and unworthy of belief.
Neither of the respondents submitted any evidence to controvert the hospital record of either the child or the respondent father.
*553 Both respondents argue that the birth of the child, with a positive toxicology for cocaine is insufficient to establish neglect. Respondent father further argues that since he did not pass the cocaine on to the unborn child nor was the child ever in his care, he could not be charged with neglect citing Matter of Fletcher (141 Misc 2d 333).
The court finds that the condition of the subject child at birth is the precipitating event warranting judicial intervention. (Family Ct Act §§ 1011, 1012; Matter of Maroney v Perales, 102 AD2d 487; Matter of Alfredo HH., 84 AD2d 860.)
Moreover, respondents overlook section 1013 (d) of the Family Court Act which provides that in determining the jurisdiction of the court under article 10 the "child need not be currently in the care or custody of the respondent if the court otherwise has jurisdiction over the matter.” As noted in the Practice Commentary to Family Court Act § 1013 (d), this provision allows the court to assume jurisdiction "when a child is in danger of being abused or neglected if he is put in the custody of a dangerous or inappropriate parent or custodian.” (Besharov, McKinney’s Cons Laws of NY, Book 29A, at 288.)
Recent medical studies have documented the risks involved and harmful effects for the child due to the use of crack or cocaine by the mother during her pregnancy.[1] Premature labor and contractions causing births averaging two weeks early and the resulting low birth weight and infant mortality have been linked to pregnant users of cocaine.[2]
Low birth weight together with below average length and head circumference, each of which may be a learning disability risk factor, have been found to be endemic among cocaine-exposed infants whose mothers used cocaine throughout pregnancy.[3] Cocaine-exposed infants demonstrate disturbed behavior such as tremulousness, hypertonia, irritability, rapid mood *554 swings, gaze-aversion, among other symptoms for the first several months of life.[4]
Thosé cocaine-exposed infants, whose exposure was limited to the first trimester demonstrated poor responses to their environments for at least the first 2 to 3 months of life.[5] After one month, infants still may not have developed beyond the level of two-day-old nondrug exposed infants.[6]
The issues presented are whether an infant born with a positive toxicology is a child entitled to be protected under the Family Court Act and whether a mother’s use of drugs during pregnancy can be the basis of a neglect determination.
The State through the Family Court has inherent power to protect and promote the welfare of young children under the parens patriae doctrine. The State’s authority to protect the viable fetus has its origins in Roe v Wade (410 US 113, 163) where the Supreme Court acknowledged that the State has an "important and legitimate interest in potential life”. Since the State can mandate that a woman complete her term of pregnancy once the fetus becomes viable,[7] it follows that the State has the obligation and the power to protect the fetus from abuse or neglect by its parents (see, Comment, Unborn Child: Can You Be Protected?, 22 U Rich L Rev 285).
The legal rights of a fetus have a long history of recognition in property and inheritance law. Prior to statutory ability to inherit (see, EPTL 3-3.3), these rights were recognized at English common law (1 Blackstone, Commentaries, at 130). More recently the legal rights of the unborn as an independent being have been recognized in tort law. (See, Prosser, Torts, at 336 [4th ed 1971], permitting compensatory damages for harm or death to a fetus.)
*555 Interpreting our child abuse and neglect statutes to include the unborn would be consistent with medical and scientific advances to treat the fetus while still in the mother’s womb.
It has been articulated that the unborn child’s most vital sources of protection are tort and child abuse laws so that "when parents fail to protect their unborn child the state may employ these substantive provision * * * to intervene on behalf of the fetus. * * * Thus the unborn child possesses a right to a gestation undisturbed by wrongful injury and the right to be born with a sound mind and body free from parentally inflicted abuse or neglect.” (See, Myers, Abuse and Neglect of the Unborn: Can the State Intervene?, 23 Duq L Rev 1, 60.)
While this court is cognizant of the parents’ constitutional rights to privacy, freedom of religion and bodily integrity, they must yield to the compelling State interest in protecting the health and welfare of the unborn (Crouse-Irving Mem. Hosp. v Paddock, 127 Misc 2d 101).
In view of the foregoing, this court finds that the birth of this child Fathima Ashanti K. J. with positive toxicology for cocaine-exhibiting symptoms of drug withdrawal and low birth weight to drug-abusing parents mandates judicial intervention for the protection of the child.
The incredible explanation of these events by the respondents together with the medical records lead the court to conclude that the child is a neglected child by a preponderance of the evidence and further if this child were to be placed in respondents’ care, there is imminent danger that the child’s physical condition may be impaired. (Matter of Department of Social Servs. v Felicia B., 144 Misc 2d 169; Matter of Smith, 128 Misc 2d 976.)

. Chasnoff, Griffith, McGregor, Dirkes and Burn, Temporal Patterns of Cocaine Use in Pregnancy, Perinatal Outcome, 261 J AMA 1741-1744 (Mar. 24, 31,1989).

. National Association for Perinatal Addiction Research and Education, A First: National Hospital Incidence Survey, Substances Most Commonly Abused During Pregnancy and Their Risks to Mother and Baby.

. Chasnoff, Perinatal Effects of Cocaine, May 1987 Contemp Ob/Gyn 163, 179; Howard, Annotations: Cocaine and Its Effects in the Newborn, 31 Developmental Med & Child Neurology 255-257 (1989).

. Chasnoff, Lewis and Squires, Cocaine Intoxication in a Breastfed Infant, 80 Pediatrics 836-838 (Dec. 1987); Oro and Dixon, Fetal and Neonatal Medicine, Perinatal Cocaine and Methamphetamiro Exposure: Maternal and Neonatal Correlates, 111 J Pediatrics 571-578 (Oct. 1987).

. Chasnoff, Perinatal Effects of Cocaine, May 1987 Contemp Ob/Gyn 163; Sandreregger, 9 Neurotoxicology & Teratology 289-290 (1987); MacGregor, Keith, Chasnoff, Rosner, Chisum, Shaw, and Minogue, Cocaine Use During Pregnancy: Adverse Perinatal Outcome, 157 Am J Ob & Gyn 686-690 (Sept. 1987).

. Revkin, Crack in the Cradle, Sept. 1989 Discover 63-69. The University of California at Los Angeles Department of Pediatrics has documented and attempted to treat the neurological impairments evidenced by cocaine-exposed infants.

. Contrary to respondent’s counsel who suggests the "mother has a right to kill her child” in útero.