322

In the Matter of STEFANEL TYESHA C., a Child Alleged to be Neglected. LESLIE C., Respondent; COMMISSIONER OF SOCIAL SERVICES OF THE CITY OF NEW YORK, Appellant.

In the Matter of SEBASTIAN M., a Child Alleged to be Neglected. ALEXANDRA B., Respondent; COMMISSIONER OF SOCIAL SERVICES OF THE CITY OF NEW YORK, Appellant.

First Department, May 29, 1990

**APPEARANCES OF COUNSEL**

*Andrew H. Rossmer* for Leslie C., respondent.

*Charmaine E. Henderson* of counsel *(Morrison & Henderson,* attorneys), for Alexandra B., respondent.

*Elizabeth I. Freedman* of counsel *(Francis F. Caputo* with her on the brief; *Peter L. Zimroth* and *Victor A. Kovner,* attorneys), for appellant.

*Barbara H. Dildine* of counsel *(Lenore Gittis,* attorney), *Law Guardian.*

## OPINION OF THE COURT

ROSENBERGER, J.

When Sebastian M. was born on July 12, 1989, his urine tested positive for cocaine. His mother admitted that she had used cocaine during the fifth month of her pregnancy and again, two days before Sebastian was born. She also admitted that she had smoked marihuana on a daily basis during her pregnancy.

The Commissioner of Social Services of the City of New York (SSC) instituted a neglect proceeding pursuant to Family Court Act article 10 on July 21, 1989, nine days after the child's birth, and alleged that Sebastian M. was a neglected child

"whose physical, mental and/or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his mother, ALEXANDRA B. to exercise a minimum degree of care in providing the child with proper supervision or guardianship, in that:

"1. Respondent mother is unable to provide proper supervision and guardianship of her child by reason of her misuse of a drug or drugs including but not limited to cocaine. Respondent's child SEBASTIAN was born on July 12, 1989 with a positive toxicology for cocaine.

"2. Respondent mother admitted to using drugs during her pregnancy.

"3. Respondent mother is not regularly or voluntarily enrolled in a drug rehabilitation program."

On the date the neglect petition was filed, the child was paroled to the care and custody of the mother who was referred to a drug rehabilitation program which she thereafter contacted. Enrollment was not a condition of parole and the mother never entered the program.

Stefanel Tyesha C. also had a positive toxicology for cocaine when he was born on September 6, 1988. His mother admitted to hospital personnel and child welfare authorities that she had used cocaine during her pregnancy. SSC brought a neglect proceeding against her on September 14, 1988 and alleged that:

"STEFANEL TYESHA C., d.o.b. 9/6/88 is a child less than

eighteen years of age whose physical, mental and emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his parent, LESLIE C., to exercise a minimum degree of care by misusing a drug or drugs in that:

"1. On September 6, 1988, the child STEFANEL TYESHA was born at Lincoln Hospital with a positive toxicology for the drug cocaine.

"2. The respondent mother LESLIE C. admitted to both the hospital staff and the S.S.C. caseworker that she used cocaine during her pregnancy.

"3. The respondent was not enrolled in a drug rehabilitation program.

"4. Therefore, due to the above the child STEFANEL TYESHA is deemed to be a neglected child, under Article 10 of the Family Court Act."

After the petition was filed, counsel informed the court that the mother had enrolled in a drug rehabilitation program. According to the Law Guardian, she never completed the program.

The respondents mothers thereafter moved to dismiss the petitions. They claimed that the petitions failed to state a cause of action because prenatal conduct cannot form the basis of a finding of neglect. The Family Court agreed and dismissed the petitions. We reverse and hold that the petitions sufficiently alleged causes of action for neglect based on the mothers' admitted use of drugs during their pregnancies, the children's positive toxicology for cocaine at birth and the failure of the mothers to be enrolled in a drug rehabilitation program at the time the petitions were filed.

On a motion to dismiss for failure to state a cause of action, "the inquiry is limited to whether the complaint, when considered as a whole 'states in some recognizable form any cause of action known to our law.' (Dulberg v Mock, 1 NY2d 54, 56.) In that regard, allegations are to be most liberally construed in favor of the pleader. (Matco Elec. Co. v Plaza Del Sol Constr. Corp., 82 AD2d 979; Cogan Mgt. Co. v Lipset, 79 AD2d 918.)" (World Wide Adj. Bur. v Gordon Co., 111 AD2d 98, 99.)

Section 1012 (f) (i) (B) of the Family Court Act defines a neglected child as a child less than 18 years of age "whose physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his parent or other person legally responsible for his

care to exercise a minimum degree of care * * * in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or a substantial risk thereof * * * by misusing a drug or drugs * * * or by any other acts of a similarly serious nature requiring the aid of the court; provided, however, that where the respondent is voluntarily and regularly participating in a rehabilitative program, evidence that the respondent has repeatedly misused a drug or drugs * * * to the extent that he loses self-control of his actions shall not establish that the child is a neglected child in the absence of evidence establishing that the child's physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired".

Ordinarily, a child will not be found neglected because of parental drug use unless such use resulted in the parent's failure "to exercise a minimum degree of care" which caused the child's condition to be impaired or to be in imminent danger of becoming impaired (Besharov, Practice Commentary, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 1012, at 260). "However, this requirement, or at least its *prima facie* proof, is waived by Family Court Act section 1046 (a) (iii), which provides that: 'proof that a person repeatedly uses a drug, to the extent that it has or would ordinarily have the effect of producing in the user thereof a substantial state of stupor, unconsciousness, intoxication, hallucination, disorientation, or incompetence, or a substantial impairment of judgment, or a substantial manifestation of irrationality, shall be prima facie evidence that a child of or who is the legal responsibility of such person is a neglected child' " *(ibid.)*.

The respondents mothers maintain that the petitions fail to state a cause of action for neglect because they do not allege any impairment of the children's condition at birth nor has any misconduct subsequent to the children's birth been alleged to support a finding of imminent danger of impairment. They further claim that the petitions fail to establish that they were repeated drug users and that the petitioner may not therefore rely on the statutory presumption contained in Family Court Act § 1046 (a) (iii). Moreover, they contend that since article 10 of the Family Court Act does not apply to fetuses, the neglect proceedings cannot be predicated on their prenatal conduct.

Contrary to the respondents' contentions, we find that a positive toxicology for cocaine in a newborn constitutes "actual impairment" for the purpose of withstanding a motion to

dismiss and that sufficient acts of the mothers have been alleged which, if established at a fact-finding hearing, would support a finding that they were repeated users of drugs. Although the respondents allege that an isolated detrimental act committed during pregnancy cannot constitute neglect, even a single act of misconduct can support such a finding *(Matter of Coleen P.,* 148 AD2d 782).

The issue is not whether a finding of neglect has been established. At the fact-finding hearing, the petitioner has the burden of proving neglect by a preponderance of the evidence (Family Ct Act § 1046 [b]; *Matter of Sharnetta N.,* 120 AD2d 276; *Matter of Valerie Leonice T.,* 107 AD2d 327) and must demonstrate a causal connection between the conduct of the parent and the alleged harm to the child *(Matter of Rebecca W.,* 122 AD2d 582). The respondents will have the opportunity to show that their use of drugs during pregnancy does not support a finding that they are repeated or habitual users, and that they are able to properly care for and supervise their children. They may also rebut the statutory presumption contained in Family Court Act § 1046 (a) (iii) by proving that they participated in a drug rehabilitation program. "A finding of neglect should not be made lightly, nor should it rest upon past deficiencies alone. It is for the court to determine if at the time of hearing the children are suffering or likely to suffer from neglect *(Matter of Vulon,* 56 Misc 2d 19)" *(Matter of Daniel C.,* 47 AD2d 160, 164).

Even if neglect is established, the children will not necessarily be removed from their mothers' care. A dispositional hearing could allow for the release of the children to their mothers' custody under certain conditions and with agency supervision (Family Ct Act §§ 1045, 1052, 1054; *Matter of Tammie Z.,* 66 NY2d 1). However, taking the allegations of the petitions as true, sufficient facts have been stated which if proven upon trial by a preponderance of the evidence would warrant a finding of neglect *(Matter of Department of Social Servs. [Mark S.] v Felicia B.,* 144 Misc 2d 169 [Fam Ct, Nassau County]).

The Family Court's dismissal of the petitions on the pleadings eliminated the opportunity for a fact-finding hearing to present evidence and relevant information on the issue of neglect. In dismissing the petitions, the court relied on its earlier decision in *Matter of Fletcher* (141 Misc 2d 333 [Fam Ct, Bronx County]). In *Fletcher,* which has not been appealed, the court held that the petitioner's allegations of prenatal

drug use and a positive toxicology for cocaine at birth did not establish a claim cognizable under the law based on the absence of allegations of a continued and repeated use of drugs. The court found that the failure to specify the time of the occurrence of the drug use during pregnancy, and the dosage and frequency of such use, precluded it from inferring a continued and repeated use of drugs. The court further concluded that the cause of action was barred because New York State has not enacted legislation regulating a pregnant woman's body or controlling her conduct with regard to a fetus and that such regulation would, in any event, violate a woman's constitutional right to privacy as set forth in *Roe v Wade* (410 US 113).

■ We find these arguments flawed, in the first instance, because the court required more pleadings and proof than necessary to sustain a neglect petition. The presumption contained in Family Court Act § 1046 (a) (iii) operates to eliminate a requirement of specific parental conduct vis-à-vis the child and neither actual impairment nor specific risk of impairment need be established *(Matter of "Male" R.,* 102 Misc 2d 1 [Fam Ct, Kings County]). The allegations contained in the petitions herein, including the children's positive toxicology for cocaine, the mothers' admitted use of drugs during their pregnancies and the fact that neither was enrolled in a drug rehabilitation program at the time of their children's birth, were sufficient to state a cause of action for neglect *(see, Matter of Theresa J. v Patricia J.,* 158 AD2d 364). Contrary to the finding of the Family Court, it is not necessary to allege specifically the time, frequency or dosage of the drug use in order to sustain the petition. Although Sebastian M.'s mother was more specific in her admissions of drug use, it is clear that both she and Stefanel Tyesha C.'s mother used cocaine in close proximity to the time of their children's birth since both children tested positive for cocaine shortly after they were born.

The respondents maintain that a cause of action for neglect cannot be maintained in the absence of allegations of continued drug use after the birth of the child. However, as the court noted in *Matter of Anthony* (81 Misc 2d 342, 345), a court cannot and should not "await broken bone or shattered psyche before extending its protective cloak around [a] child pursuant to * * * article 10 of the Family Court Act" *(see also, Matter of Cruz,* 121 AD2d 901, 903).

Petitions alleging neglect on the basis of a mother's use of

drugs during pregnancy have been upheld in other jurisdictions *(see, Matter of Baby X,* 97 Mich App 111, 293 NW2d 736; *In re Ruiz,* 27 Ohio Misc 2d 31, 500 NE2d 935 [CP]). In *Matter of Troy D.* (215 Cal App 3d 889, 263 Cal Rptr 869), the court held that it had jurisdiction based on the fact that the child was born with a detrimental condition caused by the mother's act of ingesting dangerous drugs while pregnant. The court found that the prenatal use of dangerous drugs by a mother is probative of future child neglect. We reject the respondents' contentions that the petitions herein failed to allege any impaired condition at birth. The presence of cocaine in the newborns' urine sufficiently established, for the purpose of surviving the motions to dismiss, that the children did in fact suffer such impaired condition, as every human being has the legal right "to begin life unimpaired by physical or mental defects resulting from the negligence of another" *(Endresz v Friedberg,* 24 NY2d 478, 483, in discussing *Woods v Lancet,* 303 NY 349). In order to establish neglect under Family Court Act § 1012 (f) (i) (B), the petitioner, at the fact-finding hearing, will have the burden of proving such actual impairment by a preponderance of the evidence and may introduce hospital records to show what, if any, detrimental effects were suffered by the children as a result of their mothers' use of drugs during pregnancy.

◼ The respondents' further contention that the petitions were properly dismissed because the Family Court Act does not protect fetuses and because the regulation of prenatal conduct violates the mothers' right to privacy is unavailing. The petitioners are not seeking a finding of neglect with respect to the fetuses but rather to the children born with a positive toxicology for cocaine *(Matter of Troy D., supra; Matter of Baby X, supra).* In *Matter of Milland* (146 Misc 2d 1 [Fam Ct, NY County]), the same Family Court Judge who decided *Matter of Fletcher (supra)* and the instant matters held, after trial, that the mother's prenatal misuse of alcohol, her unwillingness to receive help in fighting her dependency and her child's condition at birth (fetal alcohol syndrome) demonstrated that such misuse continued throughout her pregnancy and would likely continue after birth. The court held that the mother's use of alcohol during pregnancy, together with the other evidence in the case proved, by a preponderance of the evidence, that the child would be in danger if placed in the mother's care. Similarly, in *Matter of "Male" R. (supra)* the court held, after a fact-finding hearing,

that the excessive use of drugs by the mother prior to birth supported a finding of neglect on the basis of the evidence that she would be unable to provide adequate care subsequent to birth because of the likelihood of her continued use of drugs *(see also, Matter of Vanesa "F",* 76 Misc 2d 617 [Sur Ct, NY County]).

The respondents' reliance on the United States Supreme Court decision in *Roe v Wade (supra)* in support of their contention that a finding of neglect cannot be premised on the prenatal conduct of the mother, is misplaced. In that landmark decision, the Supreme Court held that the right of personal privacy includes the abortion decision but emphasized the fact that this right was not unqualified. We are concerned here not with a woman's privacy right in electing to terminate an unwanted pregnancy, but with the protection of the child who is born when a woman has elected to carry that child to term and deliver it. A State may properly act to safeguard health, to maintain medical standards and to protect potential life *(Roe v Wade, supra,* at 154). In recognizing the legitimate interest of the State in protecting the expectant mother as well as the newborn child, the court stated (at 162), that "[w]e repeat, however, that the State does have an important and legitimate interest in preserving and protecting the health of the pregnant woman * * * and that it has * * * *another* important and legitimate interest in protecting the potentiality of human life."

The neglect petitions herein were brought to protect the well-being of the newborn children. The Family Court Act was "designed to provide a due process of law for determining when the state, through its family court, may intervene against the wishes of a parent on behalf of a child so that his needs are properly met" (Family Ct Act § 1011). "The mandate of this statute allows a permissible invasion of the otherwise protected special relationship of parent and child" *(Matter of Department of Social Servs. [Mark S.] v Felicia B., supra,* 144 Misc 2d, at 171).

It has been stated that "[t]he important state interests in preservation of life, the potentiality of life, and child welfare lend resolute support to the argument that child abuse and neglect statutes should include unborn children. In reality, this is the only way to give meaningful effect to those interests. An interest stripped of a method of enforcement is a feckless thing. Nowhere in law are significant state interests unaccompanied by a means of implementation. This is cer-

tainly true where the state seeks to prevent death or serious bodily injury. The only reasonable mechanism to implement state interests in the unborn is through existing abuse and neglect statutes. Since these statutes can be construed to include the unborn, protection of legitimate state interests calls for such an interpretation. * * * Doing so will nourish important state interests, and extend long overdue legal protection to the unborn." (Myers, *Abuse and Neglect of the Unborn: Can the State Intervene?*, 23 Duq L Rev 1, 29; *In re Ruiz, supra; see also, Matter of Troy D., supra.*)

It has been estimated that 7,000 babies who were exposed to cocaine as a fetus are born each year in New York City (Besharov, *Crack Babies: The Worst Threat is Mom Herself*, Washington Post, Aug. 6, 1989, at B1). When women use cocaine while pregnant, the blood vessels in the placenta and fetus constrict, cutting off the flow of oxygen and nutrients (Besharov, *Let's Give Crack Babies a Way Out of Addict Families*, Newsday, Sept. 3, 1989, at 4). The prenatal use of cocaine often causes miscarriages, stillbirths, premature, low-weight births or leaves the cocaine-exposed babies with various physical and neurological malfunctions (*ibid.;* Curriden, *Holding Mom Accountable*, 76 ABA J 50 [Mar. 1990]; Kontrowitz, *The Crack Children*, Newsweek, Feb. 12, 1990, at 62; Miller, *Moms: No "Safe" Time for Cocaine*, Los Angeles Times, Nov. 28, 1989, part E, at 1). Living children have legal rights and interests in remaining alive, in being protected from physical injury, from disabling preventable illnesses and afflictions, and from psychological damage. It is the responsibility of the courts to afford them these protections when others have not.

We conclude that it was error to dismiss the neglect petitions herein for failure to state a cause of action. Accordingly, the orders of the Family Court, Bronx County (Gallet, J.), dated October 27, 1988 and the Family Court, Bronx County (Gallet, J.), entered September 27, 1989 which dismissed the child neglect petitions for failure to state a cause of action should be reversed, on the law, the motions to dismiss should be denied, and the matters should be remitted for fact-finding hearings, without costs.

MURPHY, P. J., ROSS, KASSAL and WALLACH, JJ., concur.

Order, Family Court, Bronx County, entered on or about October 27, 1988, and the order of said court entered on September 27, 1989, are unanimously reversed, on the law,

without costs and without disbursements, the motions to dismiss the respective proceedings are denied and the matters remitted for fact-finding hearings. Motion by respondent-respondent Leslie C. to strike the Law Guardian's brief is denied.