■ In the Matter of JENNIFER N., Alleged to be a Neglected Child. MADISON COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; JANINE O., Appellant.—Mercure, J. Appeal from an order of the Family Court of Madison County (O'Brien III, J.), entered February 6, 1990, which granted petitioner's application, in a proceeding pursuant to Family Court Act article 10, to adjudicate respondent's child to be neglected.

On November 15, 1988, petitioner commenced this proceeding alleging that respondent had neglected her then 13-year-old daughter, Jennifer N., by leaving her at the City of Oneida Police Department in Madison County with a letter requesting that the "system" care for her.* Following that incident, Jennifer was placed in foster care until April 1989, at which time Family Court ordered that she be returned to respondent pending further proceedings. Thereafter, on May 24, 1989, an amended petition was filed wherein it was alleged, *inter alia,* that respondent failed to provide Jennifer with education by keeping her out of school for nine days that month. Following a fact-finding hearing, Family Court concluded that there was

---

* Respondent has at various times offered a variety of reasons for her action, including that her daughter was terrified about spending the upcoming holidays with her father and that respondent had not been receiving child support for Jennifer.

evidence of educational neglect during May 1989 and that, by leaving Jennifer at the police station, respondent was guilty of "neglect per se". Family Court also found an impairment of Jennifer's physical, mental and emotional condition. Following a dispositional hearing, Family Court determined that Jennifer should remain in foster care for an additional 12 months. Respondent now appeals.

Family Court Act § 1012 (f) defines a "neglected child", in relevant part, as "a child less than eighteen years of age (i) whose physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his parent * * * to exercise a minimum degree of care (A) in supplying the child with adequate food, clothing, shelter or education * * * or medical · * * * care, though financially able to do so * * * or (B) in providing the child with proper supervision". The statute contemplates a "showing of both parental misconduct *and* harm or potential harm to the child" *(Matter of Daniel DD.,* 142 AD2d 750, 751 [emphasis supplied]) by a preponderance of the credible evidence (Family Ct Act § 1046 [b] [i]; *see, Matter of Tammie Z.,* 66 NY2d 1, 3). Thus, while actual physical injury is not necessary to support a finding of neglect *(see, Matter of Danielle M.,* 151 AD2d 240, 242; *Matter of Maroney v Perales,* 102 AD2d 487, 489), petitioner "must demonstrate a causal connection between the conduct of the parent and the alleged harm to the child" *(Matter of Stefanel Tyesha C.,* 157 AD2d 322, 327; *see, Matter of William EE.,* 157 AD2d 974, 976; *Matter of Coleen P.,* 148 AD2d 782, 784; *Matter of Susan B.,* 102 AD2d 938, 939).

Turning to the allegations of educational neglect, although respondent did write a letter to Jennifer's principal indicating that Jennifer would be kept out of school for reasons unrelated to her health, the record demonstrates that Jennifer was under a doctor's care during the relevant time period and was returned to school as soon as respondent obtained approval from Jennifer's physician. Furthermore, because "[t]here [was] absolutely no proof that [any] unexcused absences * * * had any adverse impact upon the child's education", there has been no demonstration of impairment or imminent danger of impairment *(Matter of Shelley Renea K.,* 79 AD2d 1073, 1074; *see, Matter of Jessica Y.,* 161 AD2d 368). Accordingly, petitioner failed to meet its burden of establishing the elements of educational neglect.

Similarly, petitioner has failed to demonstrate how respondent's act of dropping Jennifer off at the police station im-

paired her physical, mental or emotional condition. Maxine Block, the psychologist who treated Jennifer before this incident, testified that Jennifer did not seem to be much different after the occurrence than she had been before. Additionally, Fred Naugle, who performed a court-ordered mental health evaluation of Jennifer and her parents in April 1989, "would not say that * * * any of the problems that [he] saw in Jennifer * * * stemmed directly from that particular incident". Clearly, the episode was stressful and upsetting, but given all the evidence that the emotional problems experienced by Jennifer following the occurrence were no different in scope or magnitude from the troubles she was already having, we conclude that Family Court's order must be reversed and the petition dismissed (see, Matter of William EE., supra, at 976; Matter of Coleen P., supra, at 784; Matter of Susan B., supra, at 939).

As a final note, our decision should not be read as condoning respondent's short-sighted and ill-advised decision to leave Jennifer at the police station. Rather, the dismissal of this proceeding is predicated solely upon petitioner's failure to demonstrate that respondent's conduct impaired Jennifer's physical, mental or emotional well-being.

Order reversed, on the law, without costs, and petition dismissed. Weiss, J. P., Yesawich, Jr., Levine, Mercure and Harvey, JJ., concur.