■ In the Matter of JESSICA SS., a Child Alleged to be Neglected. COLUMBIA COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; SALLY TT., Appellant. [644 NYS2d 854] —Mercure, J. Appeal from an order of the Family Court of Columbia County (Zittell, J.), entered December 30, 1994, which granted petitioner's application, in a proceeding pursuant to Family Court Act article 10, to adjudicate Jessica SS. a neglected child.

Jessica SS. (hereinafter the child) was born in 1992. Respondent is the child's paternal grandmother. Sadly, both of the child's parents suffer from mental illness, the father having been diagnosed as a schizophrenic and the mother as suffering from paranoid schizophrenia. At the time of the child's birth, the father was a patient at Capital District Psychiatric Center (hereinafter CDPC) in the City of Albany. Prior to delivery, the mother was living in a community residence for the mentally ill. In the months preceding the child's birth, petitioner became involved in a plan for assisting the mother in caring for the child. In accordance with that plan, when the child was discharged from the hospital on August 7, 1992, she and her mother went to live with respondent on a temporary basis until suitable alternative housing could be found.

By August 1992, the father's counselors at CDPC were sufficiently satisfied with his progress to allow him an overnight pass, and arrangements were made to have him spend the night of August 10-11, 1992 at respondent's residence. During the week preceding the planned visit, respondent had at least three conversations with CDPC counselors to discuss the

overnight pass and, specifically, the fact that both the child and her mother would be present at her home. Respondent also spoke with petitioner's caseworker and supervisor of child protective services and made them aware that the father was coming home for an overnight visit. Arrangements were also made to have respondent's son Joseph and her sister Joanne present at the time of the visit to assist respondent in case there were any problems with the father.

The father arrived at respondent's home on August 10, 1992 and spent the day with the child and her mother. During that time, the father exhibited no outward signs of psychosis. Respondent and the father stayed up talking in the living room until the early morning hours of August 11, 1992. The child was with them, sleeping in a bassinet. At approximately 2:00 A.M., the mother came into the living room and indicated that she wanted to take the child to sleep with her in the adjacent bedroom. At that time, the father also went into the bedroom, but the door to the living room was left ajar. Shortly thereafter, respondent fell asleep on the living room couch.

A few hours later, respondent was awakened and heard Joanne telling the father to come inside. She got up to find the father on the front porch, holding the naked child above his head, apparently intending to herald the birth of his daughter. Respondent told the father to come inside, he immediately complied, and the child was returned to her mother. Approximately five minutes later, while respondent held the child, the father came over, removed the diaper that was draped over the child, and touched her vulva. At that point, respondent pushed the father away and directed that Joseph immediately return him to CDPC. Respondent called CDPC to inform them of the incident and to let them know that the father was on his way. Respondent also reported the incident to the director of the mother's community residence, to the father's counselor at CDPC and to the local mental health clinic.

As a result of a report of the incident to the State Central Registry, petitioner removed the child from respondent's home on the afternoon of August 11, 1992. On September 17, 1992, petitioner filed a petition charging respondent with neglect. Following fact-finding and dispositional hearings, Family Court adjudged the child to be neglected and ordered that she remain in petitioner's custody. Respondent appeals.

We agree with respondent and the Law Guardian that the hearing evidence did not satisfy petitioner's burden of establishing neglect by a preponderance of the credible evidence (see, Family Ct Act § 1046 [b] [i]; *Matter of Tammie Z.*, 66

NY2d 1). We accordingly reverse the order appealed from and dismiss the petition. Pursuant to Family Court Act § 1012 (f) (i), petitioner was required to establish by the requisite standard of proof that (1) respondent did not exercise a minimum degree of care, and (2) as a result, the child's physical, mental or emotional condition was impaired or in imminent danger of being impaired (*see, Matter of Jennifer N.*, 173 AD2d 971, 972; *Matter of Daniel DD.*, 142 AD2d 750, 751; *Matter of Shelley Renea K.*, 79 AD2d 1073). In our view, petitioner came forward with insufficient evidence to sustain its burden with regard to either element.

Initially, our reading of the record discloses no evidence of actual or threatened harm to the child. It is undisputed that the child sustained no physical injury and required no medical attention as a result of the father's conduct. Further, in view of the fact that three responsible adults were present on the scene, we are not persuaded by petitioner's supposition that the child faced a substantial risk of physical harm. Also absent from the record is any evidence that the week-old infant was emotionally or mentally harmed by the incident. Finally, viewed objectively and in relation to the conduct of a reasonable and prudent caregiver presented with the same circumstances (*see, Matter of Scott G.*, 124 AD2d 928, 929), we cannot join in Family Court's conclusion that respondent failed to exercise a minimum degree of care (*see*, Family Ct Act § 1012 [f] [i] [B]). As indicated, respondent did not permit the overnight visit until she had discussed the matter with the father's counselor at CDPC, advised petitioner of the situation, and made arrangements to have Joseph and Joanne stay at her house to help out if any problems arose. In addition, the record provides no basis for a finding that respondent could have predicted the father's actions, and there is no question that respondent acted swiftly and appropriately in response to the problems that did arise.

Under the circumstances, we need not consider the parties' remaining contentions.

Cardona, P. J., White, Casey and Spain, JJ., concur. Ordered that the order is reversed, on the law, without costs, and petition dismissed.