Matter of Brian H. (2003 NY Slip Op 51715(U))

[*1]

Matter of Brian H.

2003 NY Slip Op 51715(U)

Decided on December 2, 2003

Family Court, Kings County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 2, 2003

Family Court, Kings County

Docket: NN23028/02

Linda DaSilva, Esq., for petitioner 
Division of Legal Services, Administration for Children's Services, 345 Adams Street, 8th Floor
Brooklyn, New York 11201
Mitchell Katz, Esq., law guardian
Juvenile Rights Division of the Legal Aid Society, 111 Livingston Street, 8th Floor, Brooklyn, New York 11201
Jose Sosa, Esq., for respondent Gladys H.
505 59th Street, Brooklyn, New York 11220
Phillip Deveraux, Esq., for respondent Jose V.
350 Broadway, Suite 200, New York, New York 11201

BRYANNE A. HAMILL, J.
On January 24, 2002, the Administration for Children's Services (hereinafter ACS) initiated a child protective proceeding against Gladys H., the mother, and Jose V., the person legally responsible, alleging that the respondents failed to provide the subject child Brian an adequate education in that Brian was absent from school from November 9, 2001 until the time the petition was filed.
For purposes of the fact-finding, this Court consolidated this petition with a previously filed petition alleging excessive corporal punishment. On November 25, 2003, this Court orally rendered its fact-finding decision on the excessive corporal punishment claim, entering a fact-finding order of neglect, against Jose V. This Court also rendered its credibility determinations with respect to the six witnesses who testified, substantially crediting the testimony of Ms. Caraballo, Ms. Anderson, Mr. Bliss and Mr. Dioguardi, and substantially discrediting the testimony of Jose V. and Brian H. This written decision follows this Court's oral decision with respect to the educational neglect allegations.Discussion
Article 65 of the Education Law, section 3205(1) (a), requires "each minor from six to sixteen years of age" to attend full-time instruction in school. Section 3205(3) of the Education Law grants to cities of a certain size the power to require minors from sixteen to seventeen years of age who are not employed to attend full time day instruction. In New York City, the Chancellor of the Board of Education has promulgated a rule, making full-time attendance compulsory for unemployed minors through age 17. Thus, in New York City, children are required from age 6 to 17 to attend school on a full time basis.
Under the relevant provisions of the Family Court Act, a neglected child is a child less than eighteen years of age, whose physical, mental or emotional condition has been impaired [*2]or is in imminent danger of becoming impaired, as a result of the failure of the parent to exercise a minimum degree of care, in supplying the child with an adequate education in accordance with the provisions of Part I of Article 65 of the Education Law. FCA§1012(f) (i) (A). The statute contemplates a showing of parental failure and harm or potential harm to the subject child.
 In order to establish a prima facie case of educational neglect, ACS must establish that the child did not regularly attend school, the parent or person legally responsible did not exercise a minimum degree of care in ensuring child attend school, and harm or potential harm to the subject. Once the prima facie case is established, the burden shifts to the respondent to demonstrate that the child is either attending school or receiving the required instruction in another place, or that there is reasonable justification for the child's absences.
Proof that a minor child is not attending a public or parochial school in the district in which the parents reside makes out a prima facie case of educational neglect, which the parents must rebut with evidence that the minor is attending school and receiving the required instruction in another place. Matter of Christa H., 127 A.D. 2d 997 (4th Dept., 1987).
In the instant case, ACS has established that the subject child did not regularly attend school from November 2001 until February, 2002, with the introduction of the duly certified school records, demonstrating that Brian was absent from P.S.147 for 56 days.Unrebutted evidence of excessive school absences is sufficient to establish educational neglect. Matter of Dareth O., 304 A.D.2d 667 (2nd Dept., 2003). The Court may presume impairment, if a student is absent for a majority of the school year and failed to receive adequate alternative instruction. Matter of Fatima A., 276 A.D.2d.791 (2nd Dept., 2000); Matter of Jovan B., 153 A.D.2d 858 (2nd Dept., 1989). In addition to the potential harm to a child's intellectual growth and development, excessive absences may also contribute to a child's social isolation. Matter of Dyrandria D., 303A.D.2d 233 (1st Dept., 2003).
In the instant case, since Brian missed more than two months of school, this Court can and does draw an inference of imminent danger or potential harm, as permitted in the Matter of Jovan B., supra. Brian was only eight years old when he was kept out of the second grade for more than two months. Second grade teaches children the basic skills of reading and math as well as socialization for children of such tender years. For the subject child to have missed the majority of the first half of second grade could only cause potential harm or imminent danger to him.

ACS must also establish misconduct on the part of the respondents, in that they did not exercise a minimum degree of care in securing Brian's attendance in school. As the attendance records indicate, Brian was kept out of school for fifty-six days during the fall of 2001. Jose V. admitted that Brian did not attend school at all, while claiming that he and Brian's mother looked for a new school for him. Where a respondent parent is actively engaged in securing an appropriate and specific education placement for the child, and the child is not harmed by his absence from school, the Court will find no educational neglect. See, In Re Giancarlo P., 761 N.Y.S.2d 165 (1st Dept., 2003). Here, the respondents were not actively engaged with school authorities in securing an appropriate and specific education placement for Brian. Therefore, the respondents failed to exercise a minimum degree of care in securing Brian's regular attendance in school.
Significantly, Gladys H. chose not testify at trial, nor call any witnesses in her defense. [*3]Further, the evidence demonstrated that Gladys H. had few conversations, if any, with school officials. Jose V. testified that he first verbally requested a transfer from Joseph Caobone, the Deputy Superintendent of District 14, which encompasses P.S. 147. Mr. Caobone referred him to David Bliss from District 14, who is the Director/Coordinator of Pupil Personnel Services. Although Jose V. had several conversations with Bliss regarding a transfer, a written transfer application was not submitted by the respondents until January 16, 2002. It is undisputed that Brian did not attend school, until his transfer in February, 2002.
Bliss testified that he had between one and ten meetings with the respondents in connection with a transfer of Brian from P.S. 147. Although he was informed by Jose V. that there were problems at P.S. 147, Jose V. was never specific about what the problems were. Bliss sent a letter to Gladys H. on January 31, 2002, indicating that if Brian was not registered in school by February 14, 2002, he would initiate a charge of educational neglect with ACS. Bliss felt that the respondents were "dragging their feet" because of the amount of time it took to actually enroll Brian in school, from their initial contact in November 2001 to February 2002. Even after the transfer was granted, respondents did not immediately enroll Brian in school.
Gladys H.'s and Jose V.'s actions were generally inappropriate and insufficient for securing a school transfer for Brian. Jose V. rejected an offer of transfer by Patricia Synan, the Community Superintendent for P.S. 196, in October 2001, because he believed it to be a low performance school. Jose V. requested a transfer to P.S.250, even after he was advised against it by Bliss, who explained to them that it was not a viable transfer request because, based upon his own experience in the district, P.S. 250 was the most overcrowded elementary school. Bliss suggested a second, third and fourth choice. Respondents chose to keep Brian out of school for over two months, until they finally accepted the transfer to P.S. 120. Even then, respondents did not enroll Brian until February 8, 2002, despite the approved transfer to P.S.120 in January 2002.
Insofar as ACS has established a prima facie case of educational neglect, the burden shifts to respondents to demonstrate Brian was attending school, receiving alternative education, or a reasonable justification exists for the child's absences.
The issue presented in this case is whether this Court must consider the credibility of the explanation given by respondent Jose V. for Brian's excessive school absences. And if so, whether the evidence presented provides a reasonable justification for Brian's absence from school for almost two months.
With respect to the first issue, undoubtedly the Court must consider the credibility of any explanation given by a respondent for excessive school absences, when determining whether to make a finding of educational neglect under Article 65 of the Education Law and §1012 of the Family Court Act. However, to be construed as reasonable, the explanation must fall within certain parameters. Under circumstances in which a reasonable justification exists for a child's absences, there may be no educational neglect. As in Matter of Jennifer N., 173 A.D. 2d 971(3rd Dept.,1991), no finding of educational neglect was made because the child was under a doctor's care during the relevant time period and was returned to school as soon as the respondent obtained approval from the child's physician. No such medical excuse was proffered by the respondents here.
Before a parent may remove a child from public school in defiance of the compulsory school attendance law, the parent should be certain that he or she can establish either that the child will receive alternative schooling which meets the requirements of the State Education Law or that to send the child to school would imperil the health or safety of the child. Matter of Elizabeth Baum, 61 A.D.2d 123 (2nd Dept., 1978).
Jose V. claimed that the reason he kept Brian out of school was because he believed Brian was abused by school personnel and other students. He testified that he kept Brian out of P.S. 147 to protect him from his teacher, Ms. Lawrence, and to shield him from other students who were picking on him. Jose V. asserted that they did not send Brian to school for his own safety, and thus, they had a reasonable excuse.
Jose V. relies on two cases to support his position that parents or others involved with the care of a child have a right to put the physical safety of the child as a number one priority. See, Matter of Alice Richards, 166 Misc.359 (Chenango County, 1938) and Matter of Charlene Skipwith and Another, 14 Misc. 2d 325 (Domestic Relations Court, New York County, 1958). However, these cases are distinguishable because the children were provided alternative education. Parents who provide their children with private schooling or adequate home instruction are not considered neglectful. See, Matter of Andrew TT., 122 A.D. 2d 362 (3rd Dept., 1986); Matter of Iesha J., 183 A.D. 2d 573 (1st Dept., 1992); Matter of Dyandria D., 303 A.D. 2d 233 (1st Dept., 2003); Matter of Ember R., 285 A.D.2d 757(3rd Dept., 2001).
Here, the respondents did not provide home schooling, tutoring, or any alternative education for Brian. Thus, the Court must examine the credibility of the explanation given by Jose V. to determine if it provides reasonable justification for the withdrawal of Brian from his attendance at P.S. 147.Jose V. claimed Brian was physically abused by many school personnel and students. He testified that Brian's teacher, Ms. Lawrence, put her hands on his face, squeezed it and made his gums bleed, and that she ignored other students picking and hitting on him. He further claimed that Lawrence put her hands on Brian and grabbed him by his shirt and pulled him over to her, and that Lawrence had another child put his hands on Brian to take a picture for picture day. Jose V. further alleged that a school aide grabbed Brian by the other arm in the cafeteria and dragged him up two flights of stairs to the principal's office, and that the principal of P.S. 147 locked him in a classroom with the lights out and the shades drawn. He believed that the school personnel were retaliating against Brian because he made verbal complaints to several agencies. He verbally complained to the principal of P.S. 147, who he incidentally alleged abused Brian, to the Board of Education, the New York County District Attorney's Office, the Office of Corporal Punishment, Brooklyn Law School Clinical Program and the ACLU. The only written report filed was with Angela Grimaldi, at the Office of the Parent Advocate at the Board of Education. None of these individuals, or representatives from any of these entities, came to Court to testify on behalf of the respondents.
The respondents did not present any credible evidence upon which this Court can conclude that any of these incidents did actually occur. During Jose V.'s testimony, he repeatedly characterized the allegations, was unable to testify to Brian's words, and conceded that he never saw any documents substantiating that Brian was abused by his teacher at P.S. 147. The vague unsworn testimony of Brian substantially differed from Jose V.'s, and failed to corroborate his claims. Brian testified that he had one problem with one other student, and that although he did have a problem with Ms. Lawrence, no other teachers did anything else to him. Significantly, Brian testified that he was not afraid to go to school. Even Gladys H. failed to corroborate Jose V.'s claims of Brian's school abuse, by her failure to testify and her signed transfer request.
This Court does not substantially credit the explanation given by Jose V. for Brian's absence from school. It would appear that the respondents intended on keeping Brian out of school until the transfer to the school of their choice was approved. Offers to transfer Brian to P.S. 196 and P.S. 120 were rejected, while respondents held out for the unavailable P.S. 250 and P.S. 257. If respondents truly believed Brian's health and safety were at risk in P.S. 147, they would have accepted the first school offered, to ensure Brian's intellectual and social development did not suffer.
In conclusion, this Court does not find that the respondents provided a reasonable justification for Brian's absence from second grade for more than two months. Accordingly, the Court finds that both respondents educationally neglected eight year-old Brian, pursuant to Family Court Act 1012 § (f)(i)(A).
For purposes of the disposition, Gladys H. and Jose V. are directed to undergo a comprehensive psychosocial, psychological, and psychiatric evaluation, which shall specifically address each respondent's diagnosis and prognosis, insight and motivation for treatment, as well as the safety of Brian in their care.
The foregoing constitutes the decision and order of this Court.
E N T E R:
BRYANNE A. HAMILL, J.F.C.

Decision Date: December 02, 2003