OPINION OF THE COURT
Arthur W. Lonschein, J.
This past Saturday evening, April 20,1985, at about 6:00 p.m., while I was getting dressed for a dinner engagement, I received a telephone call at my home from an attorney who identified himself as Mark Hartman, and who told me that he was associated with the firm of Hayt, Hayt & Landau, Esqs., representing Jamaica Hospital. He informed me that at the moment, the hospital had a patient suffering from internal bleeding and who was in critical condition. He further informed me that the patient was 18 weeks pregnant and had refused a blood transfusion necessary to stabilize her condition and to save the life of the unborn child. I advised counsel that the application for leave to transfuse the patient should be made to Justice Aaron F. Goldstein, who was the Justice assigned to Special Term, Part II, of the court and that Justice Goldstein’s home was but a few blocks from.the hospital. Because of the emergency that existed, I advised him of Judge Goldstein’s telephone number and told him to call.
Some minutes thereafter, Mr. Hartman called again and told me that he had been unable to communicate with Júdge Gold-stein, and realizing that this was a life-threatening situation for the unborn child as well as the mother, I told Mr. Hartman that I would conduct a hearing at the bedside of the patient. I further advised him that I would take testimony from the physician attending the patient and to have a tape recorder available so that a record could be made of the proceedings.
*1007 Upon arriving at the hospital a half hour later, I was escorted to the intensive care unit by an officer where I met Mr. Hartman and Dr. Angelo Capiello. I was advised at the time by Dr. Capiello that the patient was 18 weeks pregnant, that her condition was critical because of bleeding from esophageal var-ices, that her hemoglobin reading was far below normal as was her hematocrit, and that she was in danger of dying without a transfusion, which she refused because of her religious beliefs, she being a member of Jehovah’s Witnesses. I asked whether her family was notified and was informed that she was single, was the mother of 10 children, that her only next of kin was a sister who was unavailable. The doctor informed me that the fetus was at that time in mortal danger as a result of her condition. Because of all the information conveyed to me at that time and because I considered the fetus as a potentially viable human being in a life-threatening situation, I ordered a hearing and convened Special Term, Part II, at the patient’s bedside. In so doing, I felt that the usual formalities of the assignment of counsel, notice to her family and testimony in a courtroom setting with stenographic record must be dispensed with because of the danger of imminent death.
Dr. Capiello was sworn and testified that he was a physician duly licensed to practice medicine, specializing in internal medicine and was in charge of the patient’s care. He testified as to the critical nature of the patient’s condition, her hemoglobin level and hematocrit and that without a transfusion she would die. The hospital chart was deemed received in evidence and Dr. Capiello read a gynecologist’s note describing the danger to the fetus. Dr. Phillip Louis was also sworn and testified. He advised me that he was a gynecologist and that unless the patient had a transfusion, the fetus would die.
I spoke to the patient and advised her who I was and the purpose of the hearing. I asked her if she would consent to a blood transfusion. She told me, in effect, that because of her religion she would not.
The patient, of course, has an important and protected interest in the exercise of her religious beliefs. If her life were the only one involved here, the court would not interfere. (See, Matter of Melideo, 88 Misc 2d 974; and generally, Matter of Storar, 52 NY2d 363; Schloendorff v Society of N. Y. Hosp., 211 NY 125.) Her life, however, is not the only one at stake. The court must consider the life of the unborn fetus.
The Supreme Court has held, in the context of abortion, that the State has a significant interest in protecting the potential of *1008 human life represented by an unborn fetus, which increases throughout the course of pregnancy, becoming “compelling” when the fetus reaches viability. (Roe v Wade, 410 US 113,162-163; Beal v Doe, 432 US 438, 446.) “Viability” is defined as that point at which the fetus becomes capable of independent life, outside of the womb. (Roe v Wade, supra.)
While I recognize that the fetus in this case is not yet viable, and that the State’s interest in protecting its life would be less than “compelling” in the context of the abortion cases, this is not such a case. In this case, the State has a highly significant interest in protecting the life of a mid-term fetus, which outweighs the patient’s right to refuse a blood transfusion on religious grounds.
This decision is in agreement with the decisions of sister States (Raleigh Fitkin-Paul Morgan Mem. Hosp. v Anderson, 42 NJ 421, 201 A2d 537; Jefferson v Griffin Spalding County Hosp. Auth., 247 Ga 86, 274 SE2d 457). An additional basis for ordering the transfusion may exist in the patient’s responsibility to her living minor children (Application of President & Directors of Georgetown Coll., 331 F2d 1000, reh denied 331 F2d 1010, cert denied sub nom. Jones v President & Directors of Georgetown Coll., 377 US 978) but this was not considered in view of the sparseness of the record on that point and the decisive nature of the interests of the unborn fetus.
For the purposes of this proceeding, therefore, the fetus can be regarded as a human being, to whom the court stands in parens patriae, and whom the court has an obligation to protect.
I therefore appointed Dr. Capiello as special guardian of the unborn child and ordered him to exercise his discretion to do all that in his medical judgment was necessary to save its life, including the transfusion of blood into the mother. The proceedings were then closed.
I advised counsel to prepare a typewritten record of the proceedings and submit the same to me with a formal order of the appointment of Dr. Capiello as special guardian containing his authority.