In the Matter of FRANCIS J. FOSMIRE, Petitioner, v DENISE J. NICOLEAU et al., Respondents.

Second Department, January 9, 1989

## APPEARANCES OF COUNSEL

*Garfunkel, Wild & Travis (Norton Travis* of counsel), for petitioner.

*Donald T. Ridley* for respondents.

## OPINION OF THE COURT

MOLLEN, P. J.

In this case, we are asked to review the procedures to be followed and the factors to be weighed in resolving the conflicting interests which arise when a competent adult refuses potentially lifesaving medical treatment because such treatment is in contravention of that individual's religious beliefs and/or expressed desire to be treated by alternative methods. We conclude that, under the circumstances of this case, the Supreme Court erred in issuing an ex parte order authorizing the administration of blood transfusions contrary to that individual's wishes and religious beliefs.

The facts of this case are essentially undisputed. Denise J. Nicoleau, a 36-year-old pregnant practical nurse, was admitted to the Brookhaven Memorial Hospital Center (hereinafter Brookhaven Memorial) on December 29, 1988, to deliver her baby by Cesarean section. Approximately one month before her admission into the hospital, Mrs. Nicoleau, a Jehovah's Witness, executed an admission consent form prepared by Brookhaven Memorial in which she consented to the administration of various medical procedures related to the birth of her baby, but specifically excluded "the administration of blood, pooled plasma or other derivatives", which treatment was contrary to her religious beliefs.* Mrs. Nicoleau also informed her attending physician during her pregnancy that, because of her religious beliefs, she would not consent to a blood transfusion. Mrs. Nicoleau's husband, a radiologist technician, is also a Jehovah's Witness.

Shortly after her admission to the hospital on December 29, Mrs. Nicoleau gave birth to a healthy baby boy. Later that evening, however, she experienced severe hemorrhaging from her uterus which caused her hemoglobin count to drop to approximately 4, which was well below the normal hemoglobin range of 12 to 14. In response to the attending physician's request for permission to provide Mrs. Nicoleau with a blood transfusion, both Mrs. Nicoleau and her husband refused to consent to the transfusion.

Early the next morning, Brookhaven Memorial applied for a court order authorizing the hospital to administer necessary blood transfusions to Mrs. Nicoleau. The Supreme Court, without conducting a hearing and without in any respect communicating with the Nicoleaus or their representatives, issued an ex parte order authorizing Brookhaven Memorial "to administer necessary blood transfusions to patient Denise Nicoleau". Shortly after the order was signed, which order did not provide for service thereof upon the Nicoleaus, and over the protestations of Mr. Nicoleau and other family members who were at Mrs. Nicoleau's bedside, Mrs. Nicoleau was given a blood transfusion. A second transfusion was administered two days later.

Mrs. Nicoleau has now applied to this court, pursuant to CPLR 5704 (a), for an order vacating the Supreme Court's ex

---

* Jehovah's Witnesses have a fundamental belief that blood transfusions are a violation of the law of God and that transgressions will be punished by God.

parte order. In the supporting papers submitted on Mrs. Nicoleau's behalf by her husband and her attorney, it was explained that the decision to forego blood transfusions is premised on Mrs. Nicoleau's religious beliefs as a Jehovah's Witness, as well as the medical risks which she perceived to be involved in such transfusions, i.e., the possibility of transmitted AIDS or other infectious diseases. It was further asserted that Mrs. Nicoleau does not want to die and that while she would not consent to undergo blood transfusions, she will accept alternative nonblood medical treatments which, in some instances, are purported to be as successful as blood transfusions. Based on the facts and circumstances of this case, we are of the opinion that vacatur of the trial court's order is warranted.

We hold that the Supreme Court erred in issuing its order authorizing the requested blood transfusions in the absence of notice to or an opportunity to be heard by Mrs. Nicoleau or her representatives. Ex parte applications are generally disfavored by the courts, unless expressly authorized by statute, because of the attendant due process implications caused by proceeding without notice (see, e.g., *Luckey v Mockridge,* 112 App Div 199; *Lohne v City of New York,* 25 AD2d 440; *Papacostopulos v Morrelli,* 122 Misc 2d 938; Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C2211:6, at 32-33). Clearly, given the important and serious nature of the rights involved in cases such as this, the court should forego taking any action on applications to administer medical treatment against the will of the patient until the patient and/or his or her legal representatives have been notified thereof and given an opportunity to be heard. In many such instances, due to the emergency nature of the relief requested, Judges have conducted their inquiry at the patient's bedside with the patient's family members and attending physicians in attendance (see, e.g., *Matter of Jamaica Hosp.,* 128 Misc 2d 1006; *Application of President & Directors of Georgetown Coll.,* 331 F2d 1000, *reh denied* 331 F2d 1010, *cert denied sub nom. Jones v President & Directors of Georgetown Coll.,* 377 US 978; *United States v George,* 239 F Supp 752). Under no circumstances, however, should the court issue an order authorizing medical treatment which is known to be in violation of the patient's expressed wishes and/or religious beliefs without first making every effort to communicate with that patient or his or her representatives and to fully comprehend the patient's state of mind and wishes. The error in this

case was further compounded by the fact that the Supreme Court's order failed to provide for service thereof upon Mrs. Nicoleau or her husband prior to the administration of the blood transfusion. As a result, the Nicoleaus were unable to seek prompt legal review of the trial court's order before the transfusion occurred. Under these circumstances, Mrs. Nicoleau's constitutional rights of due process were clearly violated and the Supreme Court's order was improper.

We have been informed that Mrs. Nicoleau's medical condition has improved and that there exists little likelihood that further transfusions will be necessary. Thus, the particular controversy before this court has, for the moment, been rendered moot. The underlying issue in this case, however—i.e., under what circumstances, if any, a competent adult may be required to undergo potentially lifesaving medical treatment which is contrary to his or her expressed wishes or stated religious beliefs—is one of public importance and, because of the expedient nature of the relief requested, often evades appellate review. In view thereof, as well as the possibility that Mrs. Nicoleau's attending physicians might determine that another blood transfusion is necessary in the near future, we take this opportunity to outline the appropriate standards to be applied by the courts in considering applications of this nature *(see, Matter of Storar,* 52 NY2d 363, 369-370; *Wons v Public Health Trust,* 500 So 2d 679, 684).

■ The law in this State has consistently recognized that every adult of sound mind has the right to determine what shall be done to his or her own body and may decline medical treatment, even if lifesaving *(see, Matter of Westchester County Med. Center [O'Connor],* 72 NY2d 517, 528; *Matter of Storar, supra,* at 376; *Schloendorff v Society of N. Y. Hosp.,* 211 NY 125, 129-130; *Matter of Delio v Westchester County Med. Center,* 129 AD2d 1, 13-14; Public Health Law §§ 2504, 2805-d). Thus, even in a case involving a mentally ill patient, the Court of Appeals held that, "even though the recommended treatment may be beneficial or even necessary to preserve the patient's life * * * it is the individual who must have the final say in respect to decisions regarding his [or her] medical treatment in order to insure that the greatest possible protection is accorded his [or her] autonomy and freedom from unwanted interference with the furtherance of his [or her] own desires * * * This right extends equally to mentally ill persons who are not to be treated as persons of lesser status or dignity because of their illness" *(Rivers v Katz,* 67 NY2d

485, 493). This right of self-determination must also be respected when a patient becomes physically incompetent, if it is established by clear and convincing evidence that the individual, while competent, indicated that he or she did not want certain medical procedures performed *(see, Matter of Westchester County Med. Center [O'Connor], supra; Matter of Storar, supra; Matter of Delio v Westchester County Med. Center, supra)*. The right of a competent adult to refuse medical treatment, even if premised upon fervently held religious beliefs, is not unqualified, however, and may be overriden by a compelling State interest *(see, Matter of Eichner [Fox]*, 73 AD2d 431, 465-467, *mod* 52 NY2d 363, *supra; Matter of Delio v Westchester County Med. Center, supra*, at 22-23). Four compelling State interests have been identified by the courts in cases involving medical treatment decisions: (1) the preservation of life, (2) the prevention of suicide, (3) the protection of innocent third parties, and (4) the maintenance of the ethical integrity of the medical profession *(see, Matter of Eichner [Fox], supra; Matter of Delio v Westchester County Med. Center, supra*, at 23; *Application of President & Directors of Georgetown Coll.*, 331 F2d 1000, 1008-1010, *supra)*.

Applying these identified State interests to the case at bar, we note, in the first instance, that with the exception of the rather conclusory affidavit submitted by Mrs. Nicoleau's attending physician, there is no evidence to indicate that nonblood medical treatments would not have been successful in preserving Mrs. Nicoleau's life. In her papers submitted to this court, Mrs. Nicoleau has cited numerous medical treatises and articles which indicate that various surgical and medical procedures, such as those involved herein, may be performed without the use of blood transfusions. Although this court does not profess to pass on the viability and safety of these alternative medical treatments as applied to Mrs. Nicoleau or to any other individual, we merely note that these matters should have been considered by the Supreme Court herein prior to issuing an order authorizing medical treatment known to be in contravention of Mrs. Nicoleau's wishes and beliefs. Moreover, even if we were to assume that no other medical treatment short of a blood transfusion would have saved Mrs. Nicoleau's life, the State's interest in preserving her life is not inviolate and, in and of itself, may not, under certain circumstances, be sufficient to overcome her expressed desire to exercise her religious belief and to forego the transfusion *(see, Matter of Melideo*, 88 Misc 2d 974; *Wons v Public*

*Health Trust,* 500 So 2d 679, 685, *supra).* On this point, we note that this case does not present a situation in which a pregnant adult woman refuses medical treatment and, as a result of that refusal, places the life of her unborn baby in jeopardy. Clearly, in such a case, the State's interest, as *parens patriae,* in protecting the health and welfare of the child is deemed to be paramount *(see, Matter of Jamaica Hosp., supra; Crouse Irving Mem. Hosp. v Paddock,* 127 Misc 2d 101). Also distinguishable from the case at bar is the situation in which a patient refuses to affirmatively consent to a certain medical treatment based on religious beliefs, but would accept such treatment if directed by a court order. In such a case, the State interest in preserving life may well sustain the issuance of such an order *(see, e.g., Matter of Powell v Columbian Presbyt. Med. Center,* 49 Misc 2d 215; *United States v George,* 239 F Supp 752, *supra).*

Secondly, the State's concomitant interest in preventing suicide was not implicated in this case since Mrs. Nicoleau has not at any time expressed an intent to die *(see, Matter of Delio v Westchester County Med. Center,* 129 AD2d 1, 24, *supra; Matter of Eichner [Fox], supra,* at 466-467). To the contrary, Mrs. Nicoleau expressed her desire to continue to live but also expressed her wish for an alternative method of treatment.

The third compelling State interest, which is relied upon in large part by Brookhaven Memorial herein, is the interest of protecting innocent third parties, particularly dependent minor children. This State interest could well prove to be superior to a competent adult's right of self-determination when the exercise of that right would deprive that individual's dependents of their source of support and care *(see, Matter of Eichner [Fox], supra; Matter of Delio v Westchester County Med. Center, supra,* at 25). Thus, consideration should be given to whether the patient is the parent of a minor child and, if so, whether a surviving parent and/or members of the child's extended family are ready, willing and able to provide the necessary care and financial, familial and emotional support for that child *(see, e.g., Randolph v City of New York,* 117 AD2d 44, 50, *mod* 69 NY2d 844; *Wons v Public Health Trust,* 500 So 2d 679, 686, *supra; St. Mary's Hosp. v Ramsey,* 465 So 2d 666, 668; *Matter of Osborne,* 294 A2d 372 [DC App]; *cf., Matter of Winthrop Univ. Hosp. v Hess,* 128 Misc 2d 804; *Application of President & Directors of Georgetown Coll.,* 331 F2d 1000, 1008, *supra).* Clearly, in any case in which the State's interest in protecting minor children is involved, the

court's determination is a particularly sensitive one and requires a most careful review of all relevant factors. Despite the concerns expressed by our concurring colleague, we are not fashioning a rigid rule to be followed blindly in every case in which there exists a surviving parent and extended family. We recognize that the court must be allowed wide latitude and broad flexibility in this area because of the endless variety of human situations which can be presented in cases of this nature. There are no preordained answers and the result in any case will be totally dependent upon the unique facts involved therein. In the case at bar, however, it would appear that the State's interest in the protection of Mrs. Nicoleau's minor child would be satisfied given the existence of a concerned and interested surviving parent, who is financially capable of supporting the child, and the existence of an involved and attentive extended family.

The fourth compelling State interest, i.e., safeguarding the ethical integrity of the medical profession, would also appear to have been satisfied under the facts of this case since the record indicates that Mrs. Nicoleau's attending physician adequately advised her and her family of the potential risks involved in foregoing blood transfusions. Moreover, Mrs. Nicoleau adequately and expressly placed Brookhaven Memorial and her attending physician on due notice as to her views on blood transfusions. Accordingly, neither Mrs. Nicoleau's physician nor Brookhaven Memorial could be deemed to have violated their professional responsibilities if they had acceded to Mrs. Nicoleau's wishes and had not administered a blood transfusion (see, Matter of Delio v Westchester County Med. Center, supra, at 25; see also, Randolph v City of New York, supra, at 49).

Finally, we emphasize that a court in addressing an application to administer blood transfusions has a responsibility to undertake the delicate and sensitive task of balancing the express wishes of the patient with the identified competing State interests and should do so only after conducting the most extensive inquiry possible under the circumstances.

SULLIVAN, J. (concurring). I am in complete agreement with my colleagues that the ex parte order issued by the Supreme Court must be vacated since it was issued without notice to or an opportunity to be heard by Mrs. Nicoleau or her representatives. As the Presiding Justice has stated, "a court in addressing an application to administer blood transfusions has

a responsibility to undertake the delicate and sensitive task of balancing the express wishes of the patient with the identified competing State interests and should do so only after conducting the most extensive inquiry possible under the circumstances" (majority opn, at 16). I also agree that it is appropriate at this time to reiterate the relevant standards to be applied to such inquiries.

However, I write separately to express my view that the protection of innocent third parties, which is generally recognized as the third of the compelling State interests that can serve to override the expressed wishes of an individual patient, is broader than that suggested by my colleagues. This interest was set forth by Circuit Judge J. Skelly Wright in *Application of President & Directors of Georgetown Coll.* (331 F2d 1000, *reh denied* 331 F2d 1010, *cert denied sub nom. Jones v President & Directors of Georgetown Coll.,* 377 US 978). In a case remarkably similar to the matter at hand, Judge Wright functioned as the court of first instance. Mrs. Jessie Jones, the 25-year-old mother of a seven-month-old child, had lost two thirds of her body's blood supply from a ruptured ulcer. Both Mrs. Jones and her husband were Jehovah's Witnesses and were forbidden by the tenets of their religion from consenting to blood transfusions under any circumstances. Judge Wright, after advising Mr. Jones to obtain counsel, conducted an appropriate bedside inquiry and, after undertaking the delicate and sensitive task of balancing, ordered such blood transfusions as the doctors should determine were necessary to save her life.

In setting forth the analysis supporting his decision, Judge Wright discussed each of the compelling State interests and their applicability to the case of Mrs. Jones. Despite the fact that Mr. Jones was apparently available to care for the seven-month-old child, Judge Wright concluded that the State had a compelling interest in preserving the life of Mrs. Jones for the benefit of her child, observing as follows: "The state, as *parens patriae,* will not allow a parent to abandon a child, and so it should not allow this most ultimate of voluntary abandonments. *The patient had a responsibility to the community to care for her infant. Thus the people had an interest in preserving the life of this mother*" (*Matter of President & Directors of Georgetown Coll.,* 331 F2d 1000, 1008, *supra* [emphasis supplied]).

This case has been repeatedly cited with approval by the courts of this State in delineating the compelling State inter-

ests that will override the right of a competent adult to refuse lifesaving medical treatment *(see, Matter of Storar,* 52 NY2d 363, 377, n 6; *Matter of Delio v Westchester County Med. Center,* 129 AD2d 1; *Matter of Eichner [Fox],* 73 AD2d 431, *mod* 52 NY2d 363; *Matter of Melideo,* 88 Misc 2d 974; *Matter of Winthrop Univ. Hosp. v Hess,* 128 Misc 2d 804). Such a body of decisions would seem to represent a settled principle of law. Unfortunately, the majority has recast this principle in a manner which I believe does not comport with these prior decisions or with the oft-stated public policy aimed at keeping family units viable and intact.

The majority's present suggestion that the existence of a concerned and interested surviving parent and an extended family satisfies the State's interest in protecting innocent third parties so that the parent-patient may forego life-saving treatment is totally at odds with the facts and rationale of *Application of President & Directors of Georgetown Coll. (supra), Matter of Winthrop Univ. Hosp. v Hess (supra),* and *Matter of Melideo (supra).* To suggest that the State will permit a child to lose one parent as long as there is a surviving parent and/or others to care for the child appears to run contrary to our own statement in *Matter of Delio v Westchester County Med. Center* (129 AD2d 1, 25, *supra* [emphasis supplied]), that "the State's interest may well be superior to an adult's right of self-determination when the exercise of that right *deprives dependents of a source of support and care".*

I do not believe that the single statement supporting the majority view found in *Randolph v City of New York* (117 AD2d 44, 50, *mod* 69 NY2d 844) is persuasive. This statement is made in the context of a medical malpractice case, is not accompanied by any supporting analysis or reasoning, and does not refer to any legislative or judicial authority to bolster the proposition it sets forth. I do not think that the public policy of this State concerning such a sensitive and vital subject should be altered without the most careful and considered reasoning. I fear that the change in established law propounded by the majority is unwarranted and may ultimately prove to be the source of much mischief.

MANGANO, and BROWN, JJ., concur with MOLLEN, P. J.; SULLIVAN, J., concurs in a separate opinion.