*1070 OPINION OF THE COURT
Robert F. Julian, J.
In this apparent case of first impression, the respondent patient, during a hearing to determine if an order for involuntary treatment should be granted, moved to dismiss the petition and asked the court to hold that his refusal to cooperate with a proposed medical treatment plan was inadequate to ripen this matter for relief. The respondent opposes the proposed treatment plan because it calls for the prescription of Haldol (a neuroleptic medication), insulin (which can only be given by intramuscular injection), or in the alternative an oral hypoglycemic agent. These medications were indicated therapies proposed to the patient as a part of his treatment plan. The respondent rejected both medications by walking out during a meeting with his caregivers convened specifically to discuss the proposed treatment plan. The respondent claims that this proceeding is not ripe, asserting that as a factual predicate he must have rejected a formal order to administer the Haldol and insulin or its oral equivalent and be given an opportunity to refuse the medications.
The respondent suffers from a schizoaffective disorder and diabetes mellitus. He has been an inpatient at the Mohawk Valley Psychiatric Center (MVPC) since December 9, 2005. Although the respondent has been generally uncooperative with his treatment during this hospitalization, he has allowed MVPC’s physicians to obtain urine samples and administer 100 mg of Loxitane in pill form. Because of the respondent’s refusal to allow proper medical treatment for the diabetes and the mental disorder, pursuant to 14 NYCRR 27.8, MVPC filed an application to treat him over his objections on January 12, 2006.
Respondent’s motion to dismiss, reserved upon at the hearing in this matter, is denied. Petitioner’s application for an order directing involuntary treatment of respondent’s mental and diabetic medical conditions is granted for the reasons set forth below.
Involuntarily committed mental patients have a fundamental right to refuse antipsychotic medication (Rivers v Katz, 67 NY2d 485, 492 [1986]). However, “[w]here the patient presents a danger to himself or other[s],” the State has the right to administer antipsychotic medication over the patient’s objection (id. at 494). The petitioner has met the evidentiary standard, proving by clear and convincing evidence that the respondent is a danger to himself.
*1071 The respondent suffers from the delusion that he has leukemia/bokemia,[1] a condition he claims is treated by consuming chocolate. This delusion is related to the patient’s Axis I schizoaffective mental disorder, which impairs the respondent’s ability to reason and make rational decisions. The danger created by his refusal of the proposed therapy is twofold: (1) short term, if his blood sugar levels are uncontrolled and significantly elevated, the respondent could become comatose, and (2) long term, the untreated diabetes could lead to permanent sequelae including blindness, renal failure, and peripheral neuropathy. Therefore, the respondent’s continued refusal to accept treatment for the diabetes endangers his well-being and makes him a danger to himself.
For the State to use its parens patriae powers, the court must determine if the patient has the mental capacity to make a reasoned decision (Rivers v Katz, 67 NY2d at 496, 497). The State’s interest must be compelling and the proposed treatment must be narrowly tailored (id. at 497). Dr. Langbart, the respondent’s attending physician, opined that the respondent is unable to make reasoned decisions regarding his health. The court agrees with that analysis. Due to respondent’s mental disorder and high blood sugar levels, which are elevated above normal limits, he is delusional and incapable of making rational decisions. He firmly believes that he suffers from both leukemia (his attending physician opines that he does not) and the nonexistent disease, bokemia. Dr. Langbart has advised the respondent that the consumption of chocolate adversely affects his health. Throughout the respondent’s hospitalization, he has refused any relevant medications except for the Loxitane, an older neuroleptic medication to which his disorder is resistant. Dr. Langbart and other physicians at MVPC have explained to the patient the specifics of his medical condition and have shared with him his lab test results, abnormal urine test results, and printed findings.
Dr. Langbart has detailed the proposed treatment for both the diabetes mellitus and the mental disorder, opining that treating the mental disorder requires the intramuscular administration of Haldol and insulin for the diabetes because the respondent refuses to take oral medications, which otherwise *1072 would be the least intrusive means of administering the medications. Haldol will address the respondent’s psychiatric condition and improve his thought process. Because the respondent took Haldol on prior occasions with success, Dr. Langbart opines that this medication is the preferred therapy for treatment of his mental disorder. Alternative treatments call for Prolixin Decanoate or Risperdal administered by intramuscular route to the respondent, but these alternatives are risky because they are known to increase blood sugar levels and the patient’s levels are already high. The respondent has elevated sugar levels in his urine, but he declines to have the more reliably diagnostic blood tests, and he will not permit either oral or intramuscular medications to treat his diabetes. By virtue of his refusals, the intramuscular administration of the medications is the next least intrusive method of medication. The court finds that the State’s proposed manner of treatment, both Haldol and insulin by intramuscular injection, is narrowly tailored to this patient’s needs based on the foregoing.
The respondent, in making the ripeness argument, fails to provide any authority establishing a clearly defined threshold in this specific medical setting. This is not surprising as the ripeness of a petition to administer medication over a patient’s objection must be determined on a case-by-case basis. The respondent’s argument that, notwithstanding this patient’s vocal refusal to accept any medication other than Loxitane, the physicians are obligated to order the medications they believe are necessary for treatment and to offer these medications to the patient so that the patient may reject the same requires further analysis. The proposed standard of physician conduct advocated by the respondent would literally require the health care professionals to tender a pill or needle to the patient — an impractical approach which invites allegations of assault, battery, and coercion. To actually order a medication or plan of therapy that the patient has unambiguously refused in the treatment plan process invites coercive attempts to administer the medication by the staff. The practice followed in this case is sufficient, i.e., if a treatment plan is proposed to the patient who rejects the plan, that rejection makes an application for involuntary treatment ripe for judicial review.
The respondent cites Friends of Earth, Inc. v Laidlaw Environmental Services (TOC), Inc. (528 US 167 [2000]) to argue that the petitioner must show standing for each individual claim. Friends of Earth, Inc. involves the Clean Water Act; *1073 therefore, it does not establish the requisite threshold a physician must meet to make an application for an order to administer medical treatment to the patient over the patient’s objection.
In the case at bar, Dr. Langbart testified that he did not formally order Haldol or insulin because the respondent refused to discuss the treatment plan, which included these medications.[2] Furthermore, Dr. Langbart and staff attempted to explain this plan to the respondent, who not only refused to allow the treatment, but also denied having any medical condition except for leukemia/bokemia. Not only do the pleadings set forth these facts, the respondent repeatedly stated in court that he does not have diabetes, or a mental disorder, and does not want Haldol or any diabetic medication.
This court’s reasoning is consistent with other analogous situations. For example, in physician-patient assault cases, a physician must obtain the patient’s consent prior to the administration of medical treatment, or else be hable for an assault (Matter of Storar, 52 NY2d 363, 376 [1981], superceded on other grounds by statute, SCPA 1750; Matter of Fosmire v Nicoleau, 144 AD2d 8, 13 [2d Dept 1989], affd 75 NY2d 218 [1990]).
The holding in this case is also consistent with the informed consent requirement of the patient-physician relationship. It is well settled that a physician must obtain an informed consent from the patient prior to administering any medical treatment, otherwise without a court order the physician will be liable for *1074 treating the nonconsenting patient even though the physician properly administered an indicated treatment (Zeleznik v Jewish Chronic Disease Hosp., 47 AD2d 199, 204 [2d Dept 1975]). In the case at bar, the patient was psychotic when the treatment plan was discussed and refused to have a detailed discussion. Given the patient’s psychiatric status, any further attempt at reasoned discourse about the benefits and risks of Haldol or the need for diabetic medication as a part of the treatment plan or an order for the same would have been inappropriate, if not futile.
Therefore not only is there no bright line standard which requires the actual tender of the medication or therapy, the case law is quite clear that without a consent prior to treatment, a physician who orders a patient-rejected treatment that is actually rendered over objection is civilly liable. Even where the patient is psychotic, the law respects the patient’s right to refuse medical treatment (Fosmire v Nicoleau, 144 AD2d at 13, 14 [2d Dept 1989]). Rather than risk a potentially violent situation, Dr. Langbart correctly opted for caution and brought this proceeding.
Like any litigant, the respondent has a duty to make courtroom proffers on a good-faith basis. The respondent volunteered during the hearing that he is a physician.[3] Respondent’s counsel asked Dr. Langbart if he had determined if the respondent was a physician. Both Dr. Langbart and respondent’s counsel had not determined the status of the patient’s education and licensure. Moreover, respondent’s counsel cross-examined Dr. Langbart about the medical basis for the underlying diagnosis of diabetes, questioning whether or not certain laboratory tests that were relied upon to diagnose the respondent’s diabetes could have been the result of other nonmedically significant conditions.
The questions summarized above were not harmless collateral inquiries because the respondent is declining treatment for both his psychiatric condition and diabetic disease based on the delusion that he has medical knowledge. Both of these inquiries, pursued for impeachment purposes, should have been grounded on a good-faith belief that (1) the respondent had medical training and/or a license, and (2) based on a properly *1075 obtained medical opinion, the respondent does not have diabetes or that the diagnosis of diabetes is questionable (see, Van Dusen v McMaster, 28 AD3d 1057 [4th Dept 2006]; People v Jones, 24 AD3d 815 [3d Dept 2005]). Because this was a bench trial, rather than hold a hearing on these concerns, the court asked the respondent’s counsel to demonstrate a good-faith basis for these questions.[4] The response to that inquiry was unsatisfactory in that the respondent’s counsel stated that budgetary concerns prevented obtaining an expert on the medical issues. The court concludes, therefore, that the respondent is not a physician and that the respondent had no sound medical basis to question the diagnosis of diabetes, thereby rendering the questions of Dr. Langbart on these issues inappropriate and inadmissible.
The petitioner’s application to administer medical treatment for the respondent’s diabetes and mental disorder over objection is granted.

. Bokemia does not appear to be an actual medical disease. The patient believes he has this disease, as noted in Dr. Langbart’s affidavit. The physicians are of the opinion that this belief results from the patient’s mental disorder. The patient also functions under the delusion that he is a physician.

. “Q: Have you had occasion during this admission to speak to him
in an attempt to explain to him the proposed treatment plan?
“A: Yes, sir, I have.
“Q: And what has been his reaction to that attempt to explain the treatment plan?
“A: Paul is always very polite. He’s always very firm. He basically says I don’t have what you say, I don’t need treatment, and that’s the end of the conversation.
“Q: Have other members of the treatment team likewise attempted to explain to him the treatment protocol?
“A: Yes, sir, they have showed him lab tests, printed findings, abnormal urine tests to show him the —
“Mr. Doe: On the average, it comes out better than ever, most. “A: — and this has not convinced him.
“Q: And, Doctor, with regard to Mr. Doe’s diagnosis of schizoaffective disorder, could that interfere with his ability to make a reasoned and informed decision with regards to the proper treatment of that condition as well as the condition of diabetes?
“A: It is the central problem in his case. It is interfering with his ability to reason and to listen to the advice of his treaters, medical treaters.”

. The respondent spoke throughout the proceeding without any objection being interposed by either counsel. He volunteered that he was a “doctor.” The court asked him if he was a medical doctor. He replied that he was a psychiatrist.

. The record does not reflect an objection by the State that was specifically articulated on the record; however, the Assistant Attorney General stood to object (transcript at 46) when the respondent and his counsel were simultaneously speaking. Perhaps the objection was not verbalized but it was obvious to the court that its concerns were not sua sponte, but were shared by the Assistant Attorney General. The respondent’s ongoing interruptions, permitted by the court in the interest of a full and fair hearing, made the proceedings confusing.