Matter of Ladapo (Pierina F.) (2024 NY Slip Op 24309)

[*1]

Matter of Ladapo (Pierina F.)

2024 NY Slip Op 24309

Decided on December 2, 2024

Supreme Court, Queens County

Dunn, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on December 2, 2024
Supreme Court, Queens County

In the Matter of The Application of Ademola Ladapo M.D. 
 Deputy Director of Adult Inpatient Psychiatry Department of Psychiatry 
 Elmhurst Hospital, Petitioner, For An Order Authorizing the Medication of Pierina F., Respondent.

Index No. 501974/2024

For the petitioner:
Mcaloon & Friedman
One State Street Plaza, 23rd Floor
New York, New York 10004
By: Dan Walters, Esq.
For patient:
Mental Hygiene Legal Services
79-01 Broadway
New Hyde Park, New York 11042
By: Corinne Lundstrum, Esq.

Scott Dunn, J.

I. INTRODUCTION
Pierina F. is a patient at Elmhurst Hospital (the "Hospital"). Pierina F. has been diagnosed with a mental illness which prevents her from understanding her condition and she lacks the capacity to make a reasoned decision regarding her treatment. Pierina F.'s treating psychiatrist seeks to treat her with Haloperidol, an antipsychotic medication. Pierina F. can clearly benefit from the administration of medication. However, Pierina F., at the time of the hearing of these applications, was also 33 weeks pregnant. The focal issue presented herein is the appropriateness of the administration of Haloperidol as it relates to the fetus.

 II. FACTS
In this matter, Pierina F. seeks release from her involuntary commitment to the Hospital pursuant to Mental Hygiene Law § 9.31. The Hospital opposes the application for discharge and seeks to retain Pierina F. at the Hospital. Furthermore, the Hospital brought an order to show [*2]cause, seeking an Order permitting medicating Pierina F. with Haloperidol. Pierina F. opposes the administering of the medication.
On November 14, 2024, a hearing was held on the applications. Dr. Kamil Dar testified on behalf of the Hospital. He testified that he is Pierina F.'s attending psychiatrist and has been so since her admission to the Hospital on October 21, 2024. Tr. at p. 4.[FN1]
Dr. Dar. testified that he had diagnosed her with having a delusional disorder. Tr. at p. 4. He testified that she was extremely suspicious, paranoid, and generally uncooperative. Tr. at pp. 5-6, 9, 18-20. He testified further that Pierina F. was pregnant and at 33 weeks of gestation. Tr. at p. 5. Dr. Dar. also testified that Pierina F. has syphilis. Tr. at p. 16. Dr. Dar testified that he wished to treat Pierina F. with Haloperidol, an antipsychotic medication. He noted some potential side effects to the medication but concluded that the medication was narrowly tailored to meet her condition and that there was no less intrusive alternative. Dr. Dar also concluded that Pierina F. lacked the capacity to make a reasoned decision relating to her medical care. Tr. at pp. 6-7. Additionally, Dr. Dar testified that the medication is "safe to be used in pregnancy." Tr. at p. 6. Finally, Dr. Dar testified that Pierina F.'s release would pose a threat to herself and to her baby, due to her limited understanding of her condition and her failure to comply with procedures offered to assist her and the fetus. Tr. at p. 6.
On cross-examination, Dr. Dar acknowledged that Pierina F. had been neither aggressive nor threatening while at the Hospital and did not appear to be violent. Tr. at p. 8. Dr. Dar testified that Pierina F. was concerned about being poisoned and had not been cooperative with pre-natal care. Tr. at pp. 9-10.
As for the administration of Haloperidol and its effect on the fetus, Dr. Dar testified on cross-examination that he works for "general inpatient psychiatry service" and has treated pregnant patients with antipsychotic medication including Haloperidol. Tr. at pp. 11-12. However, as conceded by the Hospital, Dr. Dar is not an expert in the field of obstetrics and gynecology. Tr. at p. 13. Further, Dr. Dar testified that the decision to consider Haloperidol was based on "the literature that we have" and that he was not aware of any literature which indicated that a child born after the administration of Haloperidol to a mother while pregnant could experience withdrawal symptoms or symptoms like low muscle tone, restlessness, unusual sleep patterns, trouble eating, tremors, or dehydration. Tr. at pp. 12, 14.
Lastly, Pierina F. testified. When asked if she was seeking to be discharged from the Hospital, she answered "I do not know." Tr. at p. 21. She acknowledged that she was refusing medication and explained that it was not necessary as the "baby was fine" Tr. at p. 22. Pierina F. further testified that she did not want to take the medication because she did not suffer from delusions and "because it is a drug it can affect me and it's going to affect the baby." Tr. pp. 22-23. She also testified that she did not want to be treated for syphilis because she was told that she did not have it. Tr. at pp. 24-25. Finally, she testified that she was refusing treatment from the Hospital because she does not believe the doctors and believes that the doctors are trying to harm her. Tr. at pp. 26, 29.

 III. LEGAL DISCUSSION
A. PATIENT AND MOTHER: PIERINA F.
As a threshold matter, it is not clear that Pierina F. seeks release from her involuntary [*3]commitment. Tr. at p. 21. But to the extent that she does, the Hospital must show by clear and convincing evidence that: 1) she has a mental illness; 2) is in need of further care and treatment; 3) is unable to understand the need for such care and treatment; and 4) poses a substantial threat of harm to herself or others if released (see In re Tarrence A., 132 AD3d 985 [2d Dept 2015]; Matter of Edward L., 137 AD2d 818, 819 [2d Dept 1988]).
Here, as set forth above, the Hospital has established all of these elements. Pierina F.'s mental illness is clearly established, and further, she does not comprehend that she is mentally ill. Indeed, as testified to by the psychiatrist and observed in Court, Pierina F is delusional and paranoid. Further, she is certainly in need of further care and would benefit from it. Indeed, this was established through the testimony of the psychiatrist as well. Finally, because of her mental condition, including her lack of awareness of her condition, and her refusal to accept treatment, she poses a substantial threat of harm to not only herself, but to the fetus as well.
In this regard, the requested treatment, the administration of Haloperidol, in so far as it relates to her, is appropriate as well. In this State, where, as here, an entity wishes to rely on its parens patriae power to force administration of a medical procedure on an unwilling individual, that entity must satisfy the test set forth in Rivers v. Katz (67 NY2d 485 [1986]). 
Pursuant to Rivers, as a threshold matter, the State bears the burden of demonstrating by clear and convincing evidence the patient's incapacity to make a treatment decision (see 67 NY2d at 497). This catalyzes the State's parens patriae powers. Thereafter, if the court concludes that the patient lacks the capacity to determine the course of his or or her own treatment, the State must then establish by clear and convincing evidence that "the proposed treatment is narrowly tailored to give substantive effect to the patient's liberty interest, taking into consideration all relevant circumstances, including the patient's best interests, the benefits to be gained from the treatment, the adverse side effects associated with the treatment and any less intrusive alternate treatments." (Id. at 498).
Again, here, all of the elements have been met. As established, Pierina F. lacks the capacity to determine the course of her own treatment. Further, as established through the testimony of the psychiatrist, the administration of Haloperidol would be in her best interests and would benefit her mental condition. And finally, the Hospital has established, again through the testimony of the psychiatrist, that there are no less intrusive treatments available, that there are no expected side effects of the treatment, and that in any event, Pierina F. would be monitored to ensure that the medicine is appropriately tolerated.
B. THE FETUS
The Supreme Court has long recognized that the State has legitimate interests from the outset of pregnancy in protecting the life of a fetus that may become a child (see Dobbs v Jackson Women's Health Org., 597 US 215, 360 [2022] [dissent]). And further, that that interest increases throughout the course of the pregnancy (see Application of Jamaica Hosp., 128 Misc 2d 1006, 1007-1008 [Sup Ct, Queens County 1985]; Beal v Doe, 432 US 438, 446 [1977]). In this regard, the State may exercise its parens patriae and independent police power to care for those with mental illness in its custody and control and to protect others from a mentally ill person under its custody and control through forced medical treatment (see Addington v. Texas, 441 US 418, 426 [1979]; Rivers v. Katz, 67 NY2d 485, 487 [1986]). However, to exercise that power, the State's interest must be compelling and be balanced against the liberty interest of the person (see Rivers, 67 NY2d at 496; In re K.L., 1 NY3d 362, 370 [2004]; Reno v Flores, 507 US 292, 301-302 [1993]).
Under New York law, where a medical procedure is proposed for a pregnant woman, that the woman gives consent not only for herself but also for the fetus (see Hughson v St. Francis Hosp. of Port Jervis, 92 AD2d 131, 135 [2d Dept 1983]; SanMiguel v Grimaldi, 229 AD3d 152, 159 [1st Dept 2024]). Here, Pierina F. is unwilling to give consent. But moreover, because of her mental condition, she is unable to give consent. Accordingly, as set forth in Rivers, the State may exercise its parens patriae power to determine whether forced medication is in the best interests of the fetus. In this regard, the court has exercised its parens patriae power to order medical intervention to protect the life of the fetus over the mother's religious objection (see Application of Jamaica Hosp., 128 Misc 2d 1006, 1007-1008 [Sup Ct, Queens County 1985]). It may also use its police power to protect others from harm (see Rivers, 67 NY2d at 496-498). The Court is now called upon to analyze the remaining criteria, as set forth in Rivers.
As a threshold matter, the liberty interests of both the mother and the 33-week-old fetus must be considered in relation to the State's interest in effecting a medical procedure. As for the mother, Pierina F., the Court has already determined that the State has a compelling interest which overrides the mother's liberty interest, and that medication could be administered. But this is not the end of the matter as the Court must also consider the interest of the fetus, and the need to protect it from any harm.
With respect to the fetus, on the one hand, the assertion could be made that medicating the mother will improve the mental condition of the mother, which will then in turn, place her in a better position to take care of the fetus. Indeed, in Application of Jamaica Hospital (128 Misc 2d at 1007-1008), the court permitted the administration of a medical procedure over the mother's objection, concluding that it was in the best interests of the child.
On the other hand, consideration must be given as to whether the medication might harm the fetus. In this regard, Dr. Dar testified that he believed that the medication would not harm the fetus. However, Dr. Dar also acknowledged that he was not an expert in obstetrics and gynecology. Moreover, although on cross-examination Dr. Dar. stated that he was not aware of studies which found potential side effects for a baby when Haloperidol was administered to the expectant mother, there is indeed literature stating that while Haloperidol can safely be administered to pregnant patients, there have been reports of withdrawal symptoms in newborns as well as symptoms that might include low muscle tone, restlessness, unusual sleep patterns, trouble eating, tremors and dehydration (see National Library of Medicine, https://www.ncbi.nlm.nih.gov/books/NBK560892/ [last accessed Nov. 26, 2024]; National Library of Medicine, https://pmc.ncbi.nlm.nih.gov/articles/PMC5546876/ [last accessed Nov. 26, 2024]; ScienceDirect, https://www.sciencedirect.com/science/article/abs/pii/S0149763423004396 [last accessed Nov. 26, 2024]).
Under the circumstances here and applying a Rivers analysis, the Hospital has failed to establish by clear and convincing evidence that the administration of Haloperidol would be in the best interest of the fetus, or that it would not have adverse side effects. The Court makes this decision solely based on the testimony of the psychiatrist, who, as acknowledged, is not an expert in obstetrics or gynecology. However, this conclusion is reinforced and strengthened by the fact that there is ample literature which raises concerns relating to the side effects Haloperidol on a fetus. Finally, but of significance, there is a less intrusive alternative here, which is to wait the seven weeks or so until the birth of the child, and then administer the medicine to the mother. And there has been no testimony offered that the need for medicating [*4]Pierina F. is immediate.
In reaching this conclusion, this court notes the statement of the court in In re Perra (14 Misc 3d 438, 446 [Sup Ct, Oneida County 2006]), which is of particular relevance here. In that case, as here, the court concluded that while retention, and then medication of the mother standing alone might be appropriate, the consideration of the effect of that medication on the fetus counseled against administration of the medication. In so holding, the court explained that: "[i]t is not a contradiction to assert that [the hospital] can involuntarily retain [the patient] and override her refusal of further retention and non-pharmacological treatment, and yet also assert that nevertheless, [the hospital] does not have the untrammeled right to provide whatever pharmacological treatment they deem appropriate. Both assertions are based on the interest of the state in preserving the fetus's viability and good health upon birth." (Id. at 446).[FN2]

Accordingly, it is hereby,
ORDERED that Pierina F.'s application for release is denied; and it is further,
ORDERED that the Hospital's application to administer Haloperidol medication to Pierina F. is denied.
These applications may be renewed in the future at the appropriate time.
This constitutes the Decision and Order of the Court.
Dated: December 2, 2024
Long Island City, New York
SCOTT DUNN, J.S.C.

Footnotes

Footnote 1: "Tr." refers to the transcript of the hearing in this matter held on November 14, 2024.

Footnote 2: This conclusion is unchanged even if the analysis is under the State's police power. Here, the State has the responsibility to protect the fetus from harm (see Dobbs v Jackson Women's Health Org., 597 US 215, 360 [2022] [dissent]; Matter of Stefanel Tyesha C., 157 AD2d 322 [1st Dept 1990] ["A State may properly act to safeguard health, to maintain medical standards and to protect potential life"]; In re Unborn Child, 179 Misc 2d 1, 7 [Fam Ct, Suffolk County 1998] ["Protection of the fetus, as well as protection of the pregnant woman's health, has been definitively recognized as a legitimate State interest "]). Consistent with those powers, Pierina F. should not be medicated with Haloperidol unless and until it can clearly be shown that it would not be harmful to the fetus. Likewise, subjecting Pierina F. to the administration of Haloperidol, has not been shown to be of such a compelling enough nature, that administration of the drug is necessary to ensure that harm to the fetus is avoided.